[Criminal No. 656.  Filed March 12, 1928.]

[264 Pac. 1083.]

GRANVILLE W. JOHNSON, Appellant, v. STATE, Respondent.

· Mr. W. E. Ferguson and Mr. H. L. Russell, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. Frank J. Duffy, Assistant Attorney General, for the State.

LOCKWOOD, J.—Granville W. Johnson, hereinafter called appellant, was convicted of the crime of murder in the first degree in the superior court of Coconino county, and in pursuance of the verdict of the jury was sentenced to be hanged, and he has appealed to this court for a review of the judgment.

There are some nineteen assignments of error, which we will consider in their order. As a preliminary thereto, it is best that we give a brief summary of the facts of the case necessary for the consideration of these assignments as they appear from the evidence. Appellant was the husband of Hazel E. Johnson, the deceased. Mrs. Johnson, prior to her marriage with appellant some few months before her death, was a widow with a child of some two or three years of age by her first marriage. Appellant, deceased, and the child, who had all been residing in Los Angeles for some years, were traveling from Los Angeles to St. Louis by automobile, and on the second day of May, 1926, stopped for the night at a tourist camp ground some two miles west of Williams, Arizona. They occupied what is known as a garage cabin—that is, a combined sleeping room and garage under the same roof. Some time late in the night appellant aroused some of the other occupants of the camp and told them that his wife had been murdered. The officers in Williams were called, and, after a brief investigation, arrested appellant. It appeared that the cause of Mrs. Johnson's death was two severe wounds on the head. Search was made for the instrument which caused the wounds, and a blood-stained hatchet was discovered sticking in the ground about one hundred feet from the door of the cabin. Appellant was later informed against for the murder of his wife, and at the trial the state, in order to establish a motive for the crime, offered evidence that shortly before the Johnsons had started on their trip,

Mrs. Johnson's life had been insured heavily in favor of appellant, some of the policies bearing provisions of such nature that in case of her death by accident the insurance would be materially increased. The jury returned a verdict of murder in the first degree, fixing the death penalty. A motion for new trial was made before judgment, and after judgment a writ of *coram nobis* was applied for, based on the alleged misconduct of one of the jurors. The motion was overruled and the writ denied, and the whole matter is before us for review.

The first assignment of error is that the court erred in refusing to admit the depositions of the witnesses Lenox, Williams and Watson, offered on behalf of appellant. Depositions of witnesses outside the state may be taken for use on behalf of a defendant in a criminal case in accordance with the provisions of chapter 4, title 13, part 2, Penal Code of 1913, and, to use the language of the statute itself, "not otherwise." We think, before depositions may be admitted in such a case, while it is not necessary that the statute be followed literally, there should be shown at least an attempt to observe its material requirements. In this case it appears from the record that the application for the depositions wholly failed to show even an effort to comply with the statute. We think the court did not err in rejecting them.

The second assignment is that the court erred in admitting a copy of a certain letter written by the Kansas City Life Insurance Company to appellant, when the proper effort had not been made to produce the original. It appears from the record that the original letter had been mailed to appellant and was presumably in his possession, and the copy was fully identified by a witness. While it is true ordinarily that before secondary evidence can be offered a demand must be made upon the person in posses-

sion of the primary to produce it, when a writing is in the possession or custody of one accused of a crime, it is regarded as inaccessible to the state, as the accused cannot be compelled to produce it. 16 C. J. 616. It would therefore seem that a demand for the production of the original would be unnecessary in such a case. *People* v. *Powell,* 71 Cal. App. 500, 236 Pac. 311. The court before admitting the copy inquired very carefully into its authenticity and the location of the original, and we think did not err in its action.

The third assignment is that the court erred in admitting oral evidence as to the provisions of certain life insurance policies, it being claimed that the original policies were the best evidence. It is the general rule that where primary evidence is out of the jurisdiction of the court and it is impossible to obtain it, secondary evidence is admissible. In this case the record shows that the original policies were in the state of California, and that the custodian thereof would not surrender them. Under these circumstances we think the evidence was admissible. 22 C. J. 1036.

The fourth assignment is that the court erred in admitting a conclusion of one of the witnesses as to when a certain insurance policy went into effect. The witness had qualified as to his knowledge of the particular policies and the rules, regulations, and customs of the insurance company, and we think the testimony was admissible, especially in view of the fact that the original question and answer were not objected to and the witness was rigidly cross-examined on the subject by counsel for appellant before a motion to strike the testimony was made.

It was conceded by counsel for appellant that in view of the decision of this court in *Janovich* v. *State,* 32 Ariz. 175, 256 Pac. 359, the fifth assignment of error should be overruled.

The sixth assignment is that the court erred in permitting the county attorney to argue the case to the jury in the manner in which he presented it, particularly in arguing his belief as to certain things not founded on evidence. Appellant has not cited us to any portion of the record setting forth any such argument made by the county attorney, and we are therefore unable to consider the assignment. The same state of the record exists in regard to the seventh assignment to the effect that the court should not have permitted one of the witnesses to hold the minor child of deceased on her lap during the giving of testimony.

The eighth assignment is that the court erred in permitting a witness on behalf of the state to testify as to what he told the officers when he telephoned for them. The portion of the record pointed out by appellant's counsel as sustaining this assignment does not bear it out. It refers merely to a statement made by the witness after the officers had arrived, and in the presence of the appellant. It appears, however, that on cross-examination of the same witness, counsel for appellant asked as to what information was given to the officers by the witness, and he testified that he did tell them "a man had murdered his wife out at my place." Nowhere was there any objection made to this evidence, nor was there a motion to strike it. In view of the fact that it was brought out by appellant's own counsel without objection on his part, we cannot see where error can be predicated on the admission of the evidence.

The ninth assignment contains several subdivisions, the first being that the court erred in permitting the county attorney to ask appellant if he had ever before been convicted of a felony. When a defendant takes the stand in his own behalf he may be impeached as to his credibility by proper

evidence of a former conviction of a felony. *West v. State,* 24 Ariz. 237, 208 Pac. 412; *Hadley* v. *State,* 25 Ariz. 23, 212 Pac. 458. The remaining subdivisions of the assignment will be considered by us on the general question as to whether the evidence sustains the verdict.

The tenth assignment is that the court erred in overruling appellant's motion for new trial on the ground of the disqualification of one of the jurors and the fact that another was asleep during the taking of evidence. The alleged disqualification of the juror Lane was presented to the trial court, and after hearing the evidence the court decided that the juror was not disqualified. We have examined the testimony on this point and think the decision was within the discretion of the court, and we cannot say such discretion was abused. The same was true as to the allegation that the juror Cureton was asleep.

The eleventh assignment was to the effect that a new trial should have been granted because one of the jurors, after the verdict had been returned, made affidavit that he was not convinced as to the guilt of the defendant and voted not guilty until it appeared that the other jurors would not agree with him; that he thought then and still thinks the appellant is not guilty, but because his, the juror's, wife was very ill, and he wanted to get away so as to be with her, and believed the only way to do so was to vote "guilty," he finally agreed to the verdict. This question was not raised on the motion for new trial, but on a petition for a writ of error *coram nobis.* Assuming without deciding that the matter was properly before the court for decision, we think the verdict was not subject to impeachment in this manner or for this purpose. It is true that under section 1105, Penal Code of 1913, it is competent to prove misconduct of the jury by the voluntary affidavits of a juror. We think, however, that the statute

does not apply to a case of this kind, and we have been unable to find any decision that it does. If a juror were permitted, after solemnly stating in open court that he believed beyond a reasonable doubt the defendant was guilty of a crime, and that he returned his verdict accordingly, to say that without any outside pressure being brought to bear on him, but solely for reasons existing within his own mind, he was not at the time he voted "guilty" convinced of the guilt of the defendant, it would open the door wide to perjury and fraud of every nature. We are of the opinion that a juror may not so impeach his own verdict. *Gonzales* v. *State*, 90 Tex. Cr. Rep. 238, 234 S. W. 530; *State* v. *Gay*, 82 Wash. 423, 144 Pac. 711.

The twelfth assignment is that the court erred in refusing to admit the depositions of the witnesses Donnelly, Powell, Gleasson and Meyers. So far as the witness Meyers was concerned, she appeared at the trial and testified. 18 C. J. 738. The record does not show that the defense ever offered the depositions of the witnesses Powell and Gleasson. The deposition of the witness Donnelly was taken on a commission to take the evidence of John Doe, treasurer of the city of Los Angeles, at the city hall therein, while the certificate of the notary shows the deposition of Dr. John Doe of the United States Veterans' Bureau was taken in pursuance of such commission, and it appears from the interrogatories the witness actually testifying was Dr. James G. Donnelly. It further appears that the deposition was not as to facts existing in the knowledge of the witness who actually testified, but merely as to what certain of the records of his office stated; nor was a copy of such records annexed to the deposition. The record also shows affirmatively that the statute in regard to the application for taking depositions on

behalf of appellant was utterly disregarded, and the court did not err in rejecting them.

The thirteenth assignment is that the court erred by commenting on the evidence of various witnesses. We have examined carefully the statements made by the court and appearing in the record on this subject, and are satisfied that they were in no respect comments on the evidence, but merely remarks made by the court for the purpose of explaining its rulings on certain objections made during the progress of the trial, and that they could not have been taken by the jury as being an expression of the court in regard to the truth or falsity of any of the evidence offered in the case.

The fourteenth assignment that certain evidence was not proper rebuttal is not sustained by the record. This is also true as to the fifteenth assignment, to the effect that certain questions asked of the witness Meyers were proper cross-examination, and were improperly rejected.

The sixteenth assignment is that the state suppressed a certain letter which the appellant desired to use in evidence. This question was not raised until the motion for new trial. It appears that the letter was written by deceased to her mother, Mrs. Meyers, and that when it came into the possession of the county attorney the latter promptly forwarded it to the addressee. Mrs. Meyers was in attendance at the trial, and testified and was cross-examined by counsel for appellant. If he had wished the letter for use at the trial he should have asked for it when Mrs. Meyers was available.

The seventeenth assignment is that the court permitted a certain witness to state his conclusion as to the condition of the appellant at the time of his arrest. We think the statement was one of fact, and not opinion, and the court did not err in its ruling upon this point.

In the eighteenth assignment the appellant complains of two instructions given in regard to the jury's privilege of passing on the credibility of the witness. The instructions were such as have been given in almost every homicide case tried in the state of Arizona during the last fifteen years, and they have been used by trial courts and approved by this court for at least that length of time as elementary. *West* v. *State,* 24 Ariz. 237, 208 Pac. 412; *Lawrence* v. *State,* 29 Ariz. 247, 240 Pac. 863; *Blackburn* v. *State,* 31 Ariz. 427, 254 Pac. 467.

The nineteenth assignment is that the court refused to instruct the jury in substance that they should not infer from anything that had occurred during the trial what the court's opinion in regard to the guilt or innocence of the accused was, and that if they had any inference they should not consider such inference in any manner. The court did during its instructions tell the jury that they must be guided by the evidence in the case alone, and by nothing else. It would not have been error to give the instruction asked for, and many courts in a special effort to prevent the jury from drawing any improper inferences have done so. Since, however, no place in the record has been pointed out to us where the trial judge made any statement which might have caused the jury to have had any suspicion as to his views regarding the guilt or innocence of the appellant, or the credibility of the witnesses, we think it was not error to refuse to give the instruction.

This disposes of the various errors specifically assigned by counsel for appellant, and we find the record singularly free not only from prejudicial, but even from technical, error. Notwithstanding this fact, in view of the gravity of the penalty annexed, we have examined the whole record and read the entire transcript of the evidence with meticulous care. It appears therefrom beyond dispute that the appel-

lant had an opportunity to commit the crime and a specific inducement to do so; that no other person, so far as the evidence shows, had either such opportunity or motive; that the circumstances surrounding the homicide tended to negative the idea that it was a murder perpetrated in the course of a robbery or other crime committed by a stranger; and that the explanation given by defendant as to his movements that night was contrary to the ordinary conduct of mankind.

The evidence was wholly circumstantial, it is true, but it was sufficient in law to justify belief on the part of the jury that the appellant was guilty, and that they did so believe is shown conclusively by their verdict. There is no rule more decisively settled by this court than that we will not disturb a verdict sustained by competent testimony, on the ground of the weight of the evidence. It appearing to us from the record that the trial was conducted in all respects in accordance with law, that appellant was given full opportunity to present to the jury every legal defense he had, and that the jury on evidence legally sufficient to sustain the verdict have resolved every doubt against appellant and found him guilty of murder in the first degree and fixed the extreme penalty, we have, under the law no option but to affirm the judgment. It is so ordered.

ROSS, C. J., and McALISTER, J., concur.