## No. 14,511.

### Wharton v. The People.
(90 P. [2d] 615)

Decided May 8, 1939.

Mr. C. H. BABCOCK, Mr. JAMES F. QUINE, JR., for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. HENRY E. LUTZ, Assistant, for the people.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

PLAINTIFF in error, to whom reference is hereinafter made as defendant, was convicted of murder in the first degree and sentenced to death.

The facts briefly stated are, that on the night of June 25, 1938, defendant, armed, entered one of the rooms of a hotel in Colorado Springs for the purpose of robbery and, when caught in the act, shot and killed one Latting, a house detective. He escaped that night, but a few days later was apprehended at Littleton, Colorado, and subsequently tried, with the result above announced.

All the medical experts testified defendant to be legally sane and diagnosed his condition as being one of consti-

tutional psychopathic inferiority, a symptom of which is, that although those afflicted know the difference between right and wrong, they frequently are unable to restrain themselves from doing what they know to be wrong.

Numerous errors are assigned, but for our purposes only one set out in the motion for a new trial will be considered, namely: That the court committed error in refusing to inquire into the alleged improper conduct, threat, coercion and illegal actions of the members of the jury in arriving at a verdict as set forth in an affidavit by Juror Anderson.

Two days after the verdict was returned Anderson voluntarily went to defendant's counsel and executed an affidavit, which, omitting formal and immaterial matters, is as follows:

''That the said jury in the above entitled case retired for its deliberations at or about 6:30 o'clock P. M. on September 30, 1938; that thereafter various ballots were taken by the jury on each of which ballots your Affiant voted for a penalty of life imprisonment for the defendant, Norman W. Wharton, until through the efforts, coercion, improper language and demeanor of the other members of the jury, as hereinafter set forth, your Affiant was improperly coerced and compelled to acquiesce in the verdict and penalty of the other eleven persons purporting to constitute with Affiant a duly impaneled jury to try said cause; that said * * * jury were out approximately twenty-seven hours, and did not return into Court with a purported verdict until on or about 9:30 o'clock P. M. on October 1, 1938; that after retiring on the evening of September 30, 1938, the jury deliberated until on or about 1:30 o'clock A. M. on October 1, 1938; that for a period of time following the retirement of the purported jury the language and conduct of the other eleven purported jurors were argumentative, but peaceful; that as time went on and Affiant repeatedly refused to join in the penalty proposed to be inflicted by the other eleven purported jurors many of said jurors became abusive in

their language, threatening in their manner, and coercive in their conduct; that said language, manner and conduct consisted of the following, to-wit: That accusations were made against Affiant of having been 'fixed' or 'bought off;' that accusations were made against Affiant of having perjured himself in stating on the voir dire examination of the jury that Affiant was not opposed to the death penalty; of cursing and swearing and using violent and profane language against Affiant and against defendant; * * * that said jurors continuously and repeatedly by means of persistent argument, abusive language and conduct, threatening manner, and scoffing and slurring remarks at Affiant, persistently following Affiant around the jury room and would not give him an opportunity to rest for any short period of time, bending over Affiant and repeatedly brow-beating and haranguing Affiant with repetitions of the matters herein alleged; that Affiant would attempt to escape from said other eleven purported jurors and try to get a little rest apart to himself, but that said other eleven purported jurors would one or another be at Affiant repeatedly, arguing and brow-beating and forcing upon him arguments and abusive language and conduct; * * *

"That after hours of the above repeated and continuous violent, abusive and profane language and conduct on the part of the said other eleven jurors to Affiant, Affiant became so physically weak and exhausted as to be unable to speak or argue without breaking down physically and crying and Affiant was unable to continually withstand the repeated assaults, pressure, * * * and conduct of the others in the juryroom, and the threats to physical combat made by some of the other eleven purported jurors, and Affiant, because of his said weakened physical condition and the long repeated pressure of * * * abusive epithets and conduct, as aforesaid, told said other eleven purported jurors that Affiant would let the penalty be entered on the verdict that the other eleven purported jurors wished, although Affiant at that time, and after

having repeatedly told said other eleven purported jurors that it was not the penalty arrived at by Affiant in his mind from the evidence and laws given them, but that it was a mere acquiescence by Affiant to escape the continued pressure * * * exerted upon him, as aforesaid, and was not the result of the conviction in Affiant's own mind; that the verdict and penalty as returned by the purported jury in the above entitled case on the 1st day of October, 1938, was not the verdict and penalty of Affiant, but that at the time the jury was polled by the Clerk of the Court Affiant was in such a weakened physical condition and was so dominated by the other eleven purported jurors that Affiant was unable to entertain an independent and free will and was unable because of the fear of being returned to the juryroom for further deliberations, to state in open Court that the verdict and penalty as read was not his verdict and penalty, although at the time he answered Affiant's mind was not so free from the coercive influence of the other eleven purported jurors as to be able to exercise his own free judgment and discretion;

* * *

"That on or about the 3rd day of October, 1938, the Monday morning following the entry of said purported verdict that Affiant of his own volition and voluntarily went to the offices of the attorneys for the defendant, and at that time told said attorneys the matters and things set forth in this affidavit, and that the verdict and penalty assessed by the purported jury was not the penalty that Affiant freely and voluntarily assented to; * * * ."

This affidavit was attached to and made a part of the motion for a new trial, and supported several of the grounds of that motion. No counter affidavits were filed by the district attorney, and nothing in the record here refutes the matters set forth in the affidavit. The district attorney objected to the reception and consideration of the affidavit, and although Anderson was present in court

ready to testify, the court sustained the objections without inquiry into the facts.

Counsel for the people cite *Boyles v. People,* 90 Colo. 32, 6 P. (2d) 7, which holds, in effect, that a verdict cannot be impeached by the affidavit of a member of the jury. This undoubtedly is the general rule which has been followed in this jurisdiction. Mr. Justice Butler, however, after stating the rule, citing a number of authorities, and after quoting at length from *McDonald v. Pless,* 238 U. S. 264, says (p. 40) : ''It states the rule too broadly to say that such affidavits are never admissible to impeach a verdict in a criminal case. In the Wray case [*Wray v. Carpenter,* 16 Colo. 271], supra, we stated that it is the general rule. It would not be safe to lay down any inflexible rule, for, as was said by Mr. Justice Taney in *United States v. Reid* (12 How.), 53 U. S. 361: 'Cases might arise in which it would be impossible to refuse them [such affidavits] without violating the plainest principles of justice.' In the McDonald case, supra, Mr. Justice Lamar said: 'This might occur in the gravest and most important cases;' and he adds the following words, which we adopt as applicable to the present case: ' * * * without attempting to define the exceptions, or to determine how far such evidence might be received by the judge on his own motion, it is safe to say that there is nothing in the nature of the present case warranting a departure from what is unquestionably the general rule.' ''

Is there anything in the nature of the instant case which would warrant a departure from the general rule? We think there is. To refuse to consider the issue based on the Anderson affidavit would, in our opinion, violate the ''plainest principles of justice.'' Involved herein is the question whether the penalty should be death. We held in *Fleagle v. People,* 87 Colo. 532, 536, 289 Pac. 1078, that jurors are constitutional officers, and that one of the functions which they are required to perform is to fix

the penalty where the verdict is guilty in the first degree (citing state law).

The controversy upon which the Anderson affidavit is predicated involves the penalty to be imposed by the jury—either a life sentence or death. Anderson asserts that he never did agree to a verdict of death. The Bill of Rights of the state Constitution (article II, section 16) guarantees, "That in criminal prosecutions the accused shall have the right to * * * a * * * trial by an impartial jury * * * ." The Constitution also provides (article II, section 23) that, "The right of trial by jury shall remain inviolate in criminal cases * * *." Article II, section 25, provides, "That no person shall be deprived of life * * * without due process of law." Due process of law guaranteed to the defendant a trial according to "the law of the land." That means an impartial trial and a unanimous verdict by a jury on the issue of the penalty to be imposed. If the facts above set out as contained in the affidavit are true (a matter for determination by the trial court), fundamental constitutional rights of the defendant have been violated. Eleven jurors only, instead of twelve, as required by the law of the land, fixed the penalty in the verdict upon which the defendant was sentenced to death. This is a circumstance that we cannot ignore. In none of the cases in which we have adhered to the general rule that a juror cannot impeach a verdict, do we find facts correspondent to those in the instant case. We do not attempt to define the exceptions to the general rule, but hold, for reasons already stated, that the issue here raised, under the presented facts and circumstances, constitutes such an exception, and in so holding we do not depart from the general rule as stated in *Boyles v. People, supra.* We do not find the authorities unanimous on exceptions to the general rule. "Coercion of a juror, resulting in his assent to a verdict of guilty cannot, it has been held, be shown by such juror; but, on the other hand, the sworn statement of a juror has been received to show that his assent

to the verdict was procured by the threats of other jurors." 16 C. J. 1238; *Fletcher v. State*, 25 Tenn. 249; *Crawford v. State*, vol. 2 Yerg. (Tenn.), 60. The latter case is well reasoned, directly in point here, and we quote therefrom as follows (p. 67) : "But it is said in the argument, the receiving the affidavit of jurors is against public policy; it would expose them to the being tampered with, the effect of which would be numerous applications to set aside verdicts. The like objection applies to every witness—the possibility of being practiced upon. But this does not produce the effect: The danger is imaginary; jurors in general are above attacks of this kind; and for the honor of human nature, I think there are few that would be found capable of making the attempt."

In *Perry v. People*, 63 Colo. 60, 163 Pac. 844, in which the defendant was charged with the crime of murder, an affidavit raised the question of newspaper publications which it was alleged influenced the verdict of the jury. In reversing the judgment of conviction we had this to say (p. 62) : "It does not appear that the court made any investigation of these grave charges, which if true, so vitally effected [affected] the orderly procedure of the court, the honor of the court's officers, and the material rights of the defendant, then upon trial for his liberty and life. The charges were not denied by affidavit or otherwise. It would seem under the circumstances, that duty and propriety demanded an investigation and finding by the court, as to the truth or falsity of the charges, before proceeding with the trial of the case."

In the instant case the trial court's action in denying a hearing on the question raised by the Anderson affidavit was arbitrary, and its failure to hear and determine the matter, in view of the allegations hereinabove quoted from said affidavit, was prejudicial error.

We next consider what proceedings may be necessary to correct the error committed. It is not the province of an appellate court "to pass upon questions not acted upon by the court from which the appeal is

taken." *Luther v. State,* 27 Ind. 47. The status here is as though the trial court had refused to make any ruling on the motion for a new trial. We would, under such circumstances, remand the case with directions to hear and determine the motion. In 17 C. J., at page 371, we find this language: "Sometimes the appellate court reverses and remands, not for * * * new trial, but with directions to * * * hear * * * a motion." As supporting this pronouncement, we cite the following cases: *Luther v. State, supra; State v. Vest,* 21 W. Va. 796; *Commonwealth v. Pennsylvania R. R. Co.,* 72 Pa. Super. 353; *State v. Turpin,* 332 Mo. 1012, 61 S. W. (2d) 945.

Related to a hearing and determination of the facts as involved here, we quote from *Fletcher v. State, supra,* as follows (pp. 257, 258): "The facts should have been shown, so that the court might judge of them. What the juror might have considered 'taunt' and 'abuse' others might consider animated and vehement argument, or, at most, rude manners."

We have reached the conclusion, that since the error occasioned by the failure of the trial court to hear and determine the question presented occurred after the trial, that that court should first pass upon this particular phase. The cause, therefore, is remanded and the record returned to the lower court with directions to set aside the judgment and sentence prematurely entered, and to proceed to a determination of the question raised by the affidavit hereinbefore set out, and as incorporated in the motion for a new trial. If upon due hearing and consideration the finding shall be in favor of defendant, a new trial should be ordered; otherwise the judgment and sentence should be reentered, without prejudice, however, to the right of defendant to a further review on the entire record.

Mr. Justice Francis E. Bouck dissents.