487 P.2d 3

**The STATE of Arizona, Appellant,**

**v.**

**Lary J. MELCHER, Appellee.**

**No. 2 CA–CR 243.**

Court of Appeals of Arizona,
Division 2.

July 20, 1971.

Rose Silver, Pima Co. Atty., by Duane P. Smith, Deputy Co. Atty., Tucson, for appellant.

Russo, Cox & Dickerson, P. C., by J. James Murphy, Tucson, for appellee.

KRUCKER, Chief Judge.

Appeal by the State from the granting of a new trial after jury verdicts of guilty on six counts of vehicular manslaughter. The trial court granted the motion for new trial on four grounds, which, together with the contention that the evidence sustained the convictions, constitute the questions in this appeal,[1] as follows:

(1) Whether or not the trial court should have given the instruction on proximate cause requested by the defendant.

(2) Whether or not the prosecutor's argument in regard to the defendant's intoxication was improper.

(3) Whether or not the trial court erred in granting a new trial on the basis of an affidavit by one of the jurors to the effect that she was "pressured" during the jury's deliberation.

(4) Whether or not the trial court erred in not instructing the jury in regard to certain traffic laws after counsel for the defendant waived these instructions and stipulated that they not be given.

(5) Whether or not the evidence sustains the verdicts of guilty.

We will consider these questions in the order above.

The facts here are that on the morning of January 18, 1970, the defendant, his wife and certain other individuals went to Sabino Canyon for a picnic, which lasted until approximately 5:00 p. m. The group had with them approximately three cases of beer when they arrived. A person named Joe Nairn joined the group and brought with him six to twelve additional cans of beer. There was at least one, and possibly two bottles of hard liquor at the picnic. Approximately two to two and one-half cases of beer were consumed by the defendant, Nairn and other individuals. The defendant was described as being "happy," and "feeling good" at the time the group left the picnic area at approximately 5:00 p. m. The defendant admitted to drinking six cans of beer and a portion of a drink containing hard liquor during the time he was at the picnic.

Less than a quarter of a mile from the site of the picnic Nairn collided with a bridge and required a tire change. The defendant stopped and let Nairn have his spare tire. Nairn was observed to be "feeling no pain," "pretty well on his way," and "noticeably showing that he had been consuming alcoholic beverages," at the time of the tire change. The defendant left the scene of the tire change before Nairn. The caretaker for the United States Forest Service in Sabino Canyon took the license numbers of the defendant's and Nairn's cars. Nairn was driving a grey GTO and the defendant was driving a green Chevrolet with a white top.

While traveling toward Tucson at approximately 5:15 p. m., the defendant and Nairn were observed to be doing approximately 75 to 85 miles per hour, but more than likely over 80, by a man whose hobby for some years had been high-powered racing cars and doing mechanic's work around automobile racetracks. The posted speed limit on this road is 35 miles per hour. The man testified that the two cars were accelerating as they went past him. The cars were on a straight stretch of road at this point and Nairn was in the wrong lane with his front bumper even with defendant's rear bumper (in the correct lane). The defendant was observed

1. It is noted that if the State is unable to show all its contentions to be correct, the trial court must be affirmed since it is the law of this State that a ruling on a motion for new trial is discretionary with the trial court and an abuse of discretion must be affirmatively shown in order to reverse such a ruling on appeal. State v. Godsoe, 106 Ariz. 461, 478 P.2d 85 (1970).

to move his car to the left twice as the GTO pulled out to pass. The two cars went into a curve off this straight stretch with the GTO in the wrong lane and the green Chevrolet in the correct lane of traffic.

Just over a mile toward Tucson a green Chevrolet with a white top came around a curve (to the right for the driver of the Chevrolet) at a high rate of speed (between 55 and 60 miles per hour), swerving wide into the wrong lane of traffic and back into its own lane. The green Chevrolet missed hitting a Chevrolet with Ohio license plates by three to five feet. At the time the green Chevrolet was swinging back into its own lane of traffic, Nairn's car was observed no more than a couple of car lengths behind the green Chevrolet. After leaving 280 feet of skid marks, Nairn's car crossed the center line and collided head-on with the car with Ohio plates. Nairn and five people in the car with Ohio plates died as a result of the collision. The green Chevrolet did not stop, but its license number was traced to the defendant. Nairn's blood alcohol content was .18% upon analysis after the accident. This sequence of events was observed by a family of three people who were in the car immediately behind the Ohio car.

The defendant testified he was not drag racing with Nairn and that he never noticed Nairn behind him on the road from Sabino Canyon to Tucson. He testified that his tires "squealed a little bit" at one curve on his way to Tucson but that he didn't cross over the center line. He stated that at this time he saw two cars going in the opposite direction but that he did not hear a crash. He said he first learned of the accident and Nairn's death at 4:00 p. m. on January 19, 1970.

The first question presented is whether the trial court erred in refusing to instruct the jury as requested by Defendant's Requested Instruction No. 6, which reads:

"I instruct you to [sic] that the speed of an automobile in excess of that permitted by statute or ordinance is not the proximate cause of a collision, when the driver charged with excessive speed was where he was supposed to be, and driver did not know or was not aware of second car attempting to pass him just before collision."

The defendant cites Bohnsack v. Kirkham, 72 Wash.2d 183, 432 P.2d 554 (1967), as authority for this requested instruction. The *Bohnsack* case was a civil action in which the defendant's car made a left turn into the path of the plaintiff's car. The defense there was that the plaintiff was contributorily negligent by exceeding the speed limit. The Washington Supreme Court, in *Bohnsack*, stated that to constitute contributory negligence the excessive speed must be a proximate cause of the collision and, quoting from an earlier decision, stated the standard to be:

" 'This court, on several occasions, has held that the speed of an automobile, in excess of that permitted by statute or ordinance, was not the proximate cause of a collision when the automobile of the one charged with excessive speed was where it was entitled to be, and the driver would not have had sufficient time to avoid the collision had he been driving at a lawful speed. [Citations omitted.]' " 432 P.2d at 561–562.

There are a number of reasons why this instruction should not have been given. The first is that the evidence here did not indicate that Nairn was trying to pass the defendant either at the time of the collision or very shortly before. Nairn's skid marks began on the correct side of the road and extended across the center line to the wrong side. The State's theory here was that Nairn and the defendant were racing, exceeding the speed limit and, as a

proximate result, the fatal collision occurred. There was no proof either that Nairn was trying to pass Melcher at the time of this accident or immediately before or that their two cars were side by side at this time.

The parties in a criminal case are entitled to jury instructions which state their theory of the case and are supported by the evidence. State v. Michael, 103 Ariz. 46, 436 P.2d 595 (1968); State v. Intogna, 101 Ariz. 275, 419 P.2d 49 (1966); State v. Reynolds, 11 Ariz.App. 532, 466 P.2d 405 (1970). This requested instruction is not supported by the evidence.

Another apparent fault of this instruction is that, without getting into a discussion of the doctrine of proximate cause as has been developed in civil negligence law, it does not exclude the possibility that, although the defendant might not have actually known of the other car's position, he should have known by maintaining a proper lookout. This last proposition is not necessary to a determination of the question before us and we do not so decide.

Further, assuming *arguendo* the instruction was applicable and without fault, what the requested instruction deals with is the theory of proximate cause upon which the trial court adequately instructed the jury. Therefore, such an additional instruction was unnecessary. State v. Michael, supra.

Lastly, it is obvious that the instruction requested by the defendant is considerably different from the standard stated in *Bohnsack*, with the effect that *Bohnsack* was not authority for the instruction. The trial court was correct in refusing to give this instruction and abused its discretion in granting the motion for new trial on this ground. There is authority, however, to the effect that if two parties are racing and one withdraws prior to the time the other kills a third party or himself as a proximate result of his speed, the party who withdrew would not be criminally responsible for the death of the third party. State v. Fair, 209 S.C. 439, 40 S.E.2d 634 (1946). But this theory of defense was not put forth at the trial and was not supported by the evidence presented.

■ The next question raised is the propriety of the prosecutor's argument in regard to the defendant's intoxication. Initially, upon an examination of the statements complained of, we find nothing improper in the prosecutor's arguments in this regard and no possible prejudice to the defendant thereby, with the result that this ground cannot be the basis for reversal. State v. Brady, 105 Ariz. 190, 461 P.2d 488 (1969); State v. Anderson, 102 Ariz. 295, 428 P.2d 672 (1967). The prosecutor argued to the jury that it might consider "whether or not his [the defendant] driving was somewhat under the influence of [and] that alcohol contributed to that accident, caused him to be negligent is very relevant on the issue of whether he was grossly negligent." The prosecutor argued to the jury that according to one of the defendant's witnesses, "everybody was happy," and pointed out that the defendant admittedly had been drinking. Attorneys are given wide latitude in arguments to the jury in Arizona. State v. Hannon, 104 Ariz. 273, 451 P.2d 602 (1969); State v. Dillon, 104 Ariz. 33, 448 P.2d 89 (1968). The statements here were within the bounds of propriety under *Hannon* and *Dillon* and were merely reasonable inferences which are arguable from the evidence before the jury. State v. Propp, 104 Ariz. 466, 455 P.2d 263 (1969). Furthermore, there was no objection to these statements until the filing of the defendant's motion for new trial. Such a failure to object waives the defendant's right of review of such an alleged error. State v. Maloney, 105 Ariz. 348, 464 P.2d 793 (1970); State v. Evans, 88 Ariz. 364, 356

P.2d 1106 (1960). Finally, the trial court instructed the jury that the remarks of counsel were not evidence so that if there was error in the prosecutor's argument here, it was cured. State v. Gonzales, 105 Ariz. 434, 466 P.2d 388 (1970). The trial court abused its discretion in granting a new trial on the ground of the prosecutor's argument on intoxication.

As to the State's allegation that a juror's affidavit may not be used to impeach the jury's verdict, it is the law of this State that a verdict may not be impeached by the affidavit of a juror who has agreed to the verdict in open court. State v. Madden, 104 Ariz. 111, 449 P.2d 39 (1969); State v. Silvas, 91 Ariz. 386, 372 P.2d 718 (1962); Johnson v. State, 33 Ariz. 354, 264 P. 1083 (1928). The affidavit here was to the effect that the juror had been pressured, as was the situation alleged in *Silvas.* The pertinent portion of the juror's affidavit in question reads as follows:

> "That she was pressured into going along on a unanimous verdict of 'guilty' by the sheer weight of the other jurors; that she pleaded and even cried with them; that her true feeling has been, and is, LARY J. MELCHER is not guilty because of her inability to satisfy the requirements in her own mind of defendant's guilt beyond a reasonable doubt."

However, as in *Silvas,* the jury here was inquired of as to whether or not the verdict was the verdict of each of them, with an affirmative reply. Clearly, the trial court abused its discretion in granting a motion for new trial on this ground. The defendant cites Wharton v. People, 104 Colo. 260, 90 P.2d 615 (1939), as authority for an exception to the rule, but in our view, the facts in the affidavit in the instant case are not as severe as those stated in *Wharton.* In the instant case the jury deliberated one hour and twenty minutes; in *Wharton,* some twenty-seven hours.

[4]    The State next urges that it was an abuse of discretion for the trial court to grant the defendant's motion for new trial on the ground of not giving the jury instructions as to basic speed law, speed limits and passing, where counsel for the defendant waived these instructions and stipulated that the jury be instructed on the basis of A.R.S. § 13–456, subsec. A(3) (a), as amended, and on that basis alone, citing State v. Jones, 103 Ariz. 580, 447 P.2d 554 (1968). We agree.

The State's last contention is that the evidence sustained the verdicts of guilty and that no mistake of law or fact occurred at the trial, with the effect that the granting of a new trial was an abuse of discretion. State v. Godsoe, supra. Initially, it should be pointed out that Arizona's vehicular manslaughter statute, A.R.S. § 13–456, as amended, has not been previously applied to a factual situation like the one at bar, i. e., against the driver of a car which did not physically collide with another in a fatal accident. California has a vehicular manslaughter statute, Cal.Pen. Code § 192, which varies from Arizona's statute only in a manner not material to the case here. A case very similar in its facts to the case at bar, which applied California's statute, is People v. Kemp, 150 Cal.App.2d 654, 310 P.2d 680 (1957). In *Kemp,* two cars were racing and, as they approached an intersection, a third car crossed their path (proceeding from their left to right). Kemp swerved to the left and negotiated a left turn, avoiding a collision. The driver of the other car, which was racing Kemp, swerved to the right but collided with the third car, killing an occupant. *Kemp* was convicted of vehicular manslaughter under Cal.Pen.Code § 192(3) (a), and his conviction was affirmed on appeal, where the appellate court rejected Kemp's argument that he could not be convicted when he had not collided with the other vehicle in which the deceased was

riding. The imposition of criminal responsibility for deaths which result from racing, where the racing was a proximate cause of the deaths, has an authoritative basis reaching back to an English case, Regina v. Swindall, 2 Car. & K. 230, 2 Cox C.C. 141, 175 Eng.Reprint 95 (1846) (racing horse cars), wherein the court stated:

"If the two persons are together, inciting and encouraging one another to do an unlawful act, and one of them does it, the other is equally guilty."

\* \* \* \* \* \*

"If two persons are \* \* \* inciting each other to do an unlawful act, and one of them runs over a man, whether he be the first or last [in order of position in the race], he [the other] is equally liable. \* \* \* "

See, Annot., 95 A.L.R.2d 175 § 10[c] (1964); Annot., 82 A.L.R.2d 463 (1962); Jacobs v. State, 184 So.2d 711 (Fla.App. 1966); State v. Youngblut, 257 Iowa 343, 132 N.W.2d 627 (1967); State v. Fennewald, 339 S.W.2d 769 (Mo.1960). As pointed out above, the withdrawal theory, as stated in State v. Fair, supra, seems to be one way in which courts have exonerated one party when another racing party has caused the death of a third party or his (the racing party's) own. This is to say that the defendant here could have avoided criminal responsibility by slowing down and not racing with Nairn. It is obvious that the defendant can be criminally responsible for the death of the other racing party (Nairn here) if the racing was the proximate cause of that other party's (Nairn's) death. See, Fair v. State, supra. In our opinion, the evidence in this case, as recited above, fully sustains the convictions of the defendant and the trial court abused its discretion by granting a new trial. State v. Godsoe, supra.

Reversed and remanded for imposition of sentences on the convictions below.

HOWARD, and HATHAWAY, JJ., concur.