**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 4 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

WALANZO DEON ROBINSON,

Petitioner-Appellant,

v.

GARY L. GIBSON, Warden,
Oklahoma State Penitentiary,

Respondent-Appellee.

No. 99-6438
(D.C. No. CIV-97-588-C)
(W.D. Okla.)

---

ORDER AND JUDGMENT  *

---

Before **TACHA** , Chief Judge,   **BRORBY** , Senior Circuit Judge, and    **MURPHY** ,
Circuit Judge.

---

Walanzo Deon Robinson appeals the denial of habeas relief,      *see* 28 U.S.C.

§ 2254, from his Oklahoma first degree malice murder conviction and death

sentence.  On appeal, Robinson asserts that 1) there was insufficient evidence to

support the jury's finding that the murder was especially heinous, atrocious or

---

*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

cruel; 2) jurors intimidated a holdout juror into voting for a death sentence; and 3) the trial court's flight instruction was erroneous. We affirm.

Robinson, who was nineteen years old at the time of the crime, had travelled from Los Angeles to Oklahoma City to sell crack cocaine. A jury convicted Robinson of shooting to death another drug dealer, Dennis Hill, after several disputes between the two, apparently over drug sales. At sentencing, the jury rejected the continuing threat aggravator but found that the murder was especially heinous, atrocious or cruel and sentenced Robinson to death. The Oklahoma Court of Criminal Appeals denied relief on direct appeal and in state post-conviction proceedings. *Robinson v. State*, 900 P.2d 389 (Okla. Crim. App. 1995); *Robinson v. State*, 937 P.2d 101 (Okla. Crim. App. 1997).

Robinson is entitled to the federal habeas relief he now seeks only if the state court's resolution of his claims "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent, or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). We presume state court factual findings are correct, absent clear and convincing proof to the contrary. *See id.* § 2254(e)(1). If, on the other hand, the state court did not address the merits of a claim, we review *de novo* the district court's denial of habeas relief. *See, e.g., Thomas v. Gibson*, 218 F.3d 1213, 1220 (10th Cir. 2000).

-2-

### I. *Sufficiency of the evidence supporting the especially heinous, atrocious or cruel aggravating factor.*

The State charged, and the jury determined, that Hill's murder was especially heinous, atrocious or cruel. To establish this aggravating factor, Oklahoma law requires proof that the murder was "preceded by torture or serious physical abuse. Torture includes the infliction of either great physical anguish or extreme mental cruelty, while physical abuse requires evidence of conscious physical suffering." *Romano v. Gibson*, 239 F.3d 1156, 1176 (10th Cir) (further quotation omitted), *cert. denied*, 122 S. Ct. 624, 628 (2001).

In this federal habeas proceeding, the issue presented is whether, viewing the evidence in a light most favorable to the State, there was sufficient evidence for a rational factfinder to find the existence of this aggravating factor beyond a reasonable doubt. *See, e.g., id.* at 1164, 1176 (applying *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The state appellate court held that there was sufficient evidence. *See Robinson*, 900 P.2d at 400-02. That determination was not unreasonable. *See* 28 U.S.C. § 2254(d); [1] *see also, e.g., Medlock v. Ward*,

---

[1] This court has not resolved whether it reviews the state court's decision as a legal determination, under § 2254(d)(1), or a factual finding under § 2254(d)(2) and (e)(1). *See, e.g.*, *McCracken v. Gibson*, 268 F.3d 970, 981 n.5 (10th Cir. 2001). In this case, Robinson would not be entitled to habeas relief under either standard. *See id.*

200 F.3d 1314, 1322 (10th Cir.) (reviewing similar claim for reasonableness under § 2254(d)), *cert. denied* , 531 U.S. 882 (2000).

The evidence indicates that Hill consciously suffered serious physical abuse. As the verbal altercation between Hill and Robinson ended, Robinson either pulled a gun or went inside a nearby house and returned with a gun. Hill, who was unarmed, began to run from Robinson. Robinson shot into the ground at Hill's feet and then shot Hill twice in the back. Hill fell face down in the middle of the street. He remained conscious, however, and asked bystanders to call an ambulance. He was also able to pose some sort of question to Robinson, when Robinson walked over to Hill and stood over him. Robinson then shot Hill twice more. One of these shots pierced Hill's heart and both lungs. The medical examiner testified that, although this shot was "almost instantly fatal," Hill would not necessarily have lost consciousness for several minutes. In fact, even after the second and fatal round of shots, Hill was again able to ask friends to call an ambulance.

This evidence clearly establishes that Hill remained conscious during the attack. *See Washington v. State* , 989 P.2d 960, 975 (Okla. Crim. App. 1999) (declining to suggest minimum time victim must suffer to support this aggravator, but holding that evidence that victim suffered no more than one minute was sufficient); *see also Clayton v. Gibson* , 199 F.3d 1162, 1177 (10th Cir. 1999)

(noting expert testimony is not required to establish that victim consciously suffered). Furthermore, it is reasonable to infer that Hill physically suffered from his injuries. *See McCracken*, 268 F.3d at 982; *see also Romano*, 239 F.3d at 1177 (upholding this aggravator after determining that evidence supported, although it did not compel, inference that killers tortured victim).

Robinson further asserts, however, that he is entitled to habeas relief because the Oklahoma Court of Criminal Appeals has held, in similar shooting cases, that there was insufficient evidence to support this aggravating factor. Where, however, as here, Oklahoma courts have consistently applied a facially valid aggravator, [2] a federal habeas court is not free to conduct "a *de novo*, case-by-case comparison of the facts of [other Oklahoma] cases with the facts of the instant case." *Lewis v. Jeffers,* 497 U.S. 764, 779 (1990) (citing *McCleskey v. Kemp*, 481 U.S. 279, 306-07 (1987)); *see also, e.g., Arave v. Creech*, 507 U.S. 463, 477-78 (1993).

---

[2]     Robinson does not challenge the facial validity of the Oklahoma courts' narrowed construction of its especially heinous, atrocious or cruel aggravating factor, which requires proof that the victim consciously suffered serious physical abuse or torture. Nor could he challenge it. The United States Supreme Court has held that requiring proof of serious physical abuse or torture is one constitutional way to narrow this aggravating factor. *See Maynard v. Cartwright*, 486 U.S. 356, 365 (1988). Additionally, this court has upheld Oklahoma courts' requirement of conscious suffering in addition to the serious physical abuse or torture requirement. *See, e.g., Medlock*, 200 F.3d at 1321.

In any event, contrary to Robinson's argument, this case is distinguishable from *Cheney v. State*, 909 P.2d 74, 81 (Okla. Crim. App. 1995), where the victim remained conscious for only a "couple of seconds" "at most" between gunshots; *Brown v. State*, 753 P.2d 908, 913 (Okla. Crim. App. 1988), where two of the victim's seven gunshot wounds would have been fatal within "a few minutes at the most," and the order in which the killer inflicted the seven wounds was unclear; *Stouffer v. State*, 742 P.2d 562, 563-64 (Okla. Crim. App. 1987), where there was "no reason to believe" that the victim remained conscious after the first of two shots; and *Odum v. State*, 651 P.2d 703, 707 (Okla. Crim. App. 1982), where a single gunshot resulted in the victim's immediate unconsciousness. *See also Marquez v. State*, 890 P.2d 980, 987 (Okla. Crim. App. 1995) (holding that evidence was insufficient to support this aggravator where sleeping victim received three shots, one of which would have resulted in instantaneous death, and medical examiner could not determine the order in which killer inflicted these wounds).

## II.     *Juror intimidation of holdout juror.*

Robinson, who is an African-American, alleges that jurors harassed, coerced, physically threatened and racially intimidated the only African-American on the jury, Marcia Davidson. During deliberations, Davidson was the sole vote against sentencing Robinson to death.

## A. Procedural default.

In state post-conviction proceedings, the Oklahoma Court of Criminal Appeals held that Robinson had procedurally defaulted this claim because he could have raised it on direct appeal, but failed to do so. *See Robinson*, 937 P.2d at 105. According to Robinson, however, he could not have raised this claim on direct appeal because it is based upon facts outside the trial record and Oklahoma procedures would not have permitted him to supplement the direct-appeal record with those new facts. *See generally, e.g., Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999) (holding habeas petitioner must specifically allege that state procedures are inadequate). The State, on the other hand, contends that Robinson could have presented these extra-trial-record facts on direct appeal by first raising them in a new trial motion. *See generally id.* (holding State bears ultimate burden of establishing state procedural bar's adequacy). Under similar circumstances, this court has remanded the habeas case to the district court to determine whether this state procedural bar is adequate to preclude federal habeas review. *See Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir. 1999) (addressing procedural default of ineffective-assistance claims); *English v. Cody*, 146 F.3d 1257, 1263-65 (10th Cir. 1998) (same).

Here, however, we affirm the denial of habeas relief on the merits, because we can do so more easily and succinctly. *See Romero v. Furlong*, 215 F.3d 1107,

1111 (10th Cir.), *cert. denied*, 531 U.S. 982 (2000); *see also Boyd v. Ward*, 179 F.3d 904, 913 n.1 (10th Cir. 1999) (refusing to apply this procedural bar to preclude habeas review of ineffective-assistance claim because, among other reasons, this court could not determine whether Oklahoma adequately and evenhandedly applied its "special remand rule" to permit expanding direct-appeal record). Because the state courts did not address this claim's merit, we review it *de novo*. *See Thomas*, 218 F.3d at 1220.

### B.     Merits.

In support of this claim, Robinson submits his defense investigator's affidavit relating what Juror Davidson told the investigator, as well as another investigator's affidavits relating other jurors' statements corroborating Davidson's story. Robinson, however, acknowledges that individual jurors generally cannot impeach the jury's verdict. While evidence concerning external influences on a jury may be admissible, a juror,

> [u]pon an inquiry into the validity of a verdict or indictment, . . . may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith . . . . Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

-8-

Fed. R. Evid. 606(b); *see also* Okla. Stat. Ann. tit. 12, § 2606(B). [3] "Testimony concerning intimidation or harassment of one juror by another falls squarely within the core prohibition of the Rule." *United States v. Stansfield*, 101 F.3d 909, 914 (3d Cir. 1996) (federal direct criminal appeal) (further quotation omitted).

Rule 606(b) "is grounded in the common-law rule against admission of jury testimony to impeach a verdict . . . ." *Tanner v. United States*, 483 U.S. 107, 121 (1987). The rule has long been "that the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict." *McDonald v. Pless*, 238 U.S. 264, 269 (1915); *see also Tanner*, 483 U.S. at 117 (noting that "near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict"). Precluding this evidence represents a choice of the "lesser of two

---

[3]     Robinson addresses only Rule 606(b) of the Federal Rules of Evidence. Several circuits, however, have suggested that state evidentiary rules, rather than the federal rule, are relevant when a habeas petitioner first introduced such evidence in state court. *See Loliscio v. Goord*, 263 F.3d 178, 185-88 (2d Cir. 2001); *Doan v. Brigano*, 237 F.3d 722, 735 n.8 (6th Cir. 2001); *see also Capps v. Sullivan*, 921 F.2d 260, 262-63 (10th Cir. 1990) (applying, without further discussion, federal rule in pre-AEDPA case, where state post-conviction court refused to permit petitioner to submit evidence in state court). Here, although Robinson submitted these affidavits to the state post-conviction court, that court did not address their admissibility, holding instead that Robinson had waived his claim. In any event, we need not decide which rule should apply in this case because the federal rule and the Oklahoma rule are the same.

evils" -- not redressing a private litigant's injury in favor of upholding the public policy promoting private and unassailable juror deliberations. *McDonald*, 238 U.S. at 267-68; *see also Tanner*, 483 U.S. at 120 (recognizing and further explaining the "weighty government interest in insulating the jury's deliberative process").

Robinson, however, relies upon language in *McDonald* indicating a possible exception to this general rule when a juror's testimony "could not be excluded without violating the plainest principles of justice." *McDonald*, 238 U.S. at 268-69 (further quotation omitted). Although we cannot condone the conduct alleged here, however, invoking *McDonald*'s exception is not warranted. *Cf., e.g., Gall v. Parker*, 231 F.3d 265, 277, 332-33 (6th Cir. 2000) (declining to consider, in capital case, post-trial evidence from juror concerning internal influences on jury deliberations), *cert. denied*, 121 S. Ct. 2577 (2001); *Bacon v. Lee*, 225 F.3d 470, 472, 485 (4th Cir. 2000) (declining, in capital case, to consider jurors' evidence that, during deliberations, jurors referred to African-American defendant's race and his interracial relationship, and made racial jokes), *cert. denied*, 121 S. Ct. 1420 (2001); *United States v. Roach*, 164 F.3d 403, 407, 412-13 (8th Cir. 1998) (holding inadmissible, in Native American's federal direct criminal appeal, Native American juror's affidavit alleging, among other things, that other jurors pressured her, referred to her race, and told her it was ten white

people versus one Indian); *United States v. Brito*, 136 F.3d 397, 402, 414 (5th Cir. 1998) (holding inadmissible, in federal direct criminal appeal, juror's affidavit asserting, among other things, that other jurors coerced her vote through threats and insults); *United States v. Jones*, 132 F.3d 232, 237, 245-46 (5th Cir. 1998) (declining, in federal capital appeal, to consider jurors' affidavits impeaching death sentence), *aff'd on other grounds*, 527 U.S. 373 (1999). *But see Wharton v. People*, 90 P.2d 615, 616-18 (Colo. 1939) (applying *McDonald*'s exception to permit evidence of threats against, and abuse and coercion of, lone juror holding out against imposing death sentence).

## III.    *Flight instruction.*

The trial court instructed the jury that, if it found beyond a reasonable doubt that Robinson had taken flight soon after the crime, the jury could consider that fact in determining whether Robinson was guilty of first degree murder. *See* O.R. at 266 (Instruction 29). The instruction defined "flight" as departing or concealing himself, with a consciousness of guilt, in order to avoid arrest. *See id.*

Robinson first asserts that the evidence did not support the trial court's giving this instruction in the first place. While Robinson's direct appeal was pending, the Oklahoma Court of Criminal Appeals held that, under Oklahoma law, the trial court should only give this instruction "in cases where the evidence is controverted by the defendant and as an exception rather than as a rule."

-11-

*Mitchell v. State*, 876 P.2d 682, 685 (Okla. Crim. App. 1993), *opinion corrected by* 887 P.2d 335 (Okla. Crim. App. 1994). *See generally, e.g., Hale v. State*, 934 P.2d 1100, 1102 (Okla. Crim. App. 1997) (noting that *Mitchell* was interpreting state law). The state appellate court, however, declined to apply *Mitchell* to cases such as Robinson's, that were pending on direct appeal when that court decided *Mitchell*. Nor did the state appellate court specifically address Robinson's federal law claims challenging this instruction. We therefore review *de novo* the district court's denial of habeas relief on the merits. *See Thomas*, 218 F.3d at 1220. We consider, however, not whether giving this instruction violated Oklahoma law, but only whether this instruction denied Robinson due process or a constitutionally fair trial. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *see also Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997).

Robinson argues that this instruction impermissibly infringed on the presumption that he was innocent and unconstitutionally shifted the State's burden of proof to him. The burden was not shifted. *See Nguyen*, 131 F.3d at 1357. The instruction did not alter the presumption that Robinson was innocent. *See id.* The trial court specifically instructed the jury on that presumption and on the State's burden of proving each element of the charged offense beyond a reasonable doubt. *See* O.R. at 244 (Instruction 7); s*ee also Nguyen*, 131 F.3d at 1357.

Further, the instructions did not permit the jury to presume that Robinson was present at the scene and guilty. Rather, the flight instruction indicates only that there was evidence presented at trial that he fled the crime scene. That evidence was presented at trial. Davera Johnson and Rodney Carolina saw Robinson shoot Hill. Immediately after the shooting, Anthony Lee saw Robinson walking away from the crime scene with a gun in his hand. Opothleyahola and Johnida Hudson, from whose home Robinson had been selling drugs, testified that Robinson was armed and in their neighborhood at the time of the shooting. Immediately after the shooting, Robinson returned to their home and told Opothleyahola that he had shot a man. Retrieving his jacket, Robinson left, telling the women he would return. He never returned.

Later that morning, Brenda Finley and an acquaintance went to a house a few blocks from the crime scene. There, they found Robinson with several other people, discussing the fact that Robinson had shot someone. Finley then took Robinson back to her home. When she heard news reports that police were looking for Robinson, however, Finley called Robert Love, asking him to get Robinson out of her house. Love then took Robinson to a motel room which Love had rented under Love's name. Less than two weeks later, Love accompanied Robinson back to California. During that trip, Robinson asked whether he could be extradited back to Oklahoma.

There was, then, evidence Robinson had fled the crime scene after the shooting. Nevertheless, the flight instruction did not *require* the jury to presume that Robinson was at the crime scene and had fled. Rather, jurors could only consider this evidence as "circumstantial evidence of guilt" if they found beyond a reasonable doubt that Robinson had hidden or fled from the crime scene, with a consciousness of guilt and in order to avoid arrest. *Nguyen*, 131 F.3d at 1357. This instruction, therefore, did not deprive Robinson of due process or a fair trial. *See id.* Nor does *Apprendi v. New Jersey* alter this reasoning. *See* 530 U.S. 466, 469, 490 (2000) (holding that due process requires jury to determine beyond reasonable doubt any fact that will increase maximum sentence).

## IV. CONCLUSION

Having considered the record and the parties' appellate arguments, we therefore AFFIRM the denial of habeas relief.

Entered for the Court


Deanell Reece Tacha
Chief Judge