NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARK CASTILLO, *Appellant.*

No. 1 CA-CR 21-0116
FILED 3-31-2022

Appeal from the Superior Court in Maricopa County
No. CR2019-158419-001
The Honorable Rosa Mroz, Judge (Deceased)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Aaron Moskowitz
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

---

C A M P B E L L, Judge:

¶1        This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defense counsel has searched the record on appeal and advised us there are no meritorious grounds for reversal. Mark Castillo was given the opportunity to file a supplemental brief but did not do so. Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the conviction and resolving all reasonable inferences against Castillo, *State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶2        For Christmas 2019, Brooke received a watch as a gift.[1] She and her partner, Josh, were staying the night at a hotel and decided to sell the watch to pay for food or another night at the hotel. They tried to sell the watch at a nearby gas station but were unsuccessful. Josh and Brooke returned to the hotel room when Castillo knocked on the door and inquired about the watch. Castillo and Josh walked downstairs to the first-floor hallway, and Brooke followed behind. Josh testified that he handed the watch to Castillo to inspect, and when he attempted to take it back, Castillo "flashed" a gun at him by lifting his shirt and revealing the gun in his waistband. Josh ultimately took the watch back, but while he was holding it, another man grabbed the watch and ran away.

¶3        Josh and Brooke reported the incident to the police. Later that day, police contacted Castillo at the same gas station where Josh attempted to sell the watch. The police asked Castillo about the robbery and observed a BB gun on the front seat of his vehicle, which was parked in the gas station parking lot. Castillo was taken into custody and charged with one count of armed robbery, a class 2 felony, and one count of aggravated robbery, a class 3 felony.

---

[1]        We use pseudonyms to protect the victims' privacy.

¶4 The State filed several pretrial motions, including an allegation of historical priors, a request for an Arizona Rules of Criminal Procedure (Rule) 609 hearing, allegations of aggravating circumstances, and allegations of serious offense/life imprisonment pursuant to A.R.S. § 13-706(A). Before Castillo testified, the superior court addressed the State's Rule 609 motion. The court found that all of Castillo's prior convictions were subject to Rule 609 but limited the State to only using three of the convictions to impeach Castillo's credibility.

¶5 At trial, the State introduced footage from the responding police officer's body cameras, footage from the holding cell where Castillo was placed after his arrest, interior and exterior surveillance footage from the hotel, and the BB gun used during the robbery. The officers, two victims, and the manager of the hotel also testified. The jury returned a guilty verdict for both counts. The jury also found that three of the four aggravating circumstances were proven beyond a reasonable doubt, including: (1) "[t]he offenses involved the presence of an accomplice;" (2) "[t]he defendant was previously convicted of a felony within ten years immediately preceding December 25, 2019;" and (3) "[t]he defendant has previously served time in prison."

¶6 The superior court received one juror question during deliberations: whether the jury could make a recommendation to the judge. The court instructed the jury that, after it reached a verdict, jurors may make recommendations to the judge. After the trial ended, the court received an email from one juror, which stated: "most of us felt that the weapon (BB gun) was not being used as, or perceived as a threat, or to intimidate, the victim(s)." A few days later, the court received a letter from another juror stating: "I do not believe his BB gun was used as a threat against [the victim], and I do not believe it was perceived as a threat by [the victim]. Further, I did not see the gun pointed at [the victim] at any time during the video exhibit."

¶7 Castillo moved for a new trial pursuant to Rule 24.1(c)(1), arguing that the juror's letter negated an element of each of the charged offenses. Rule 24.1(c)(1) provides that the superior court "may grant a new trial . . . if the verdict is contrary to law or the weight of the evidence." Ariz. R. Crim. P. 24.1(c)(1). The superior court denied Castillo's motion, finding "the verdicts are not contrary to law, and are supported by the weight of the evidence." The superior court also found that Castillo could not rely on Rule 24.1(d), which permits the court to receive juror evidence to impeach the verdict if the validity of the verdict is challenged under Rule 24.1(c)(3).

¶8 "[A] juror who has agreed to the verdict in open court may not later impeach his own verdict," absent "the types of jury misconduct enumerated in Rule 24.1(c)(3)." *State v. Poland*, 132 Ariz. 269, 282 (1982). Castillo did not allege any juror misconduct. *See* Ariz. R. Crim. P. 24.1(c)(3). In fact, the jury was polled, and each juror assented to the final verdicts. *See State v. Kiper*, 181 Ariz. 62, 68 (App. 1994) (rejecting defendant's request to examine a juror because the jury was polled and "substantial case law holds that the subjective motives and mental processes of a juror are not a proper area of inquiry to impeach a verdict."); *State v. Melcher*, 15 Ariz. App. 157, 161 (App. 1971) (finding an abuse of discretion when the superior court granted a new trial based on a juror affidavit after the verdict was announced and the jury was polled).

¶9 At the sentencing hearing, the superior court found both aggravating and mitigating circumstances existed and that they did not outweigh each other. The court sentenced Castillo to a presumptive term of 15.75 years for count 1 and 11.25 years for count two, to be served concurrently. The court also credited Castillo for 305 days already served. Castillo timely appealed.

¶10 After a thorough review of the record, we find no reversible error. *Clark*, 196 Ariz. at 541, ¶ 50. Although the court granted Castillo one more day of presentence incarceration credit than was warranted, absent a cross-appeal by the State, we will not correct the sentence. *State v. Dawson*, 164 Ariz. 278, 286 (1990). The record reflects Castillo was present and represented by counsel at all critical stages of the proceedings against him. The evidence presented supports the convictions, and the sentences imposed fall within the range permitted by law. As far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Castillo's constitutional and statutory rights. Therefore, we affirm Castillo's convictions and sentences.

¶11 Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, his obligations are fulfilled once he informs Castillo of the outcome of this appeal and his

future options. *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Castillo has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:    AA