### 38585. THACKER v. THE STATE.

DECIDED JANUARY 11, 1961.

*Sanders & Mottola, Walter D. Sanders, Charles Van S. Mottola,* for plaintiff in error.

*Wright Lipford, Solicitor-General,* contra.

JORDAN, Judge. Hollis Thacker was indicted by the grand jury of Coweta County at the September term, 1960, for the

offense of involuntary manslaughter. The indictment alleged "that the said Hollis Thacker on the 22nd day of June, in the year 1960 in the county aforesaid did then and there unlawfully and without any intention to do so, and without any malice or mixture of deliberation, and in the commission of certain unlawful acts hereinafter set out, did kill one Jimmy Stone, in the following manner, to wit: For that the said accused by common intent and concert of action, and while in the prosecution of a riotous intent, wilfully race and otherwise engage in a contest of speed with the deceased, Jimmy Stone, in a violent and tumultuous manner, to wit: By racing, aligned and abreast; the said racing and alignment of vehicles driven by the said Hollis Thacker, and the deceased, Jimmy Stone, utilizing, requiring and occupying all the main traveled portion of a heavily congested and traveled road and highway known as the Big Poplar Road, to the exclusion of all others using said highway, at a time one-half hour before sunrise until one-half hour after sunset when the lawful rate of speed was sixty (60) miles per hour, the said accused, Hollis Thacker, then and there driving and operating his motor vehicle at a high, dangerous and wanton rate of speed in excess of sixty miles per hour, the exact speed to the grand jurors unknown, and as a result of the unlawful act herein set out, the accused, Hollis Thacker, did kill the said Jimmy Stone, for that the said Jimmy Stone in furtherance of the acts herein set out, did lose control of his motor vehicle which he, the said Jimmy Stone, deceased, was then and there driving, causing said motor vehicle to leave the main traveled portion of the highway, namely, Big Poplar Road, inflicting as a result of losing control of said motor vehicle, certain mortal wound and mortal wounds on and upon the person of the said Jimmy Stone, from which said mortal wound and wounds the said Jimmy Stone died." The indictment set out the unlawful acts of the defendant as (a) engaging the deceased in a contest of speed, (b) operating a motor vehicle in a contest of speed with that of the vehicle of the deceased at a rate of speed greater than sixty miles per hour, (c) aligning his motor vehicle abreast with the vehicle of the deceased and racing in a manner to occupy all the main traveled portion of a heavily congested

public road to the exclusion of all others, (d) wilfully and by concert of action engaging in a riotous action and conduct, and (e) while engaged in a contest of speed with the deceased, in furtherance of a riotous intent, in operating a motor vehicle at a speed in excess of sixty miles per hour, in aligning his vehicle abreast with that of the vehicle of the deceased, and while engaged in said act racing, did fail to anticipate the loss of control of the automobile by the deceased which the deceased was driving, and which resulted in the death of the deceased, all of said acts being contrary to the laws of said State, the good order, peace and dignity thereof.

The defendant filed a general demurrer to the indictment on the grounds that the allegations therein do not charge him with any offense under the law, that under the allegations he is not guilty of any offense under the laws of Georgia, and that said indictment is wholly insufficient in law. He also demurred specially to the indictment on several grounds. The trial court overruled the general and special demurrers, to which order the defendant excepted and brings the matter to this court for review.

Briefly the indictment charges the defendant with the offense of involuntary manslaughter growing out of a "drag race" between the defendant and the deceased in which the deceased lost control of his car and was killed. Involuntary manslaughter is defined as "the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner: Provided, that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder." *Code* § 26-1009.

The essential elements of the offense of involuntary manslaughter in the commission of an unlawful act are (1) the intentional commission of the unlawful act and (2) the killing of a human being as the proximate result of such act but without

the intention to kill. *Wells v. State,* 44 Ga. App. 760 (162 S. E. 835); *Overman v. State,* 187 Ga. 396, 398 (1 S. E. 2d 20); *Passley v. State,* 62 Ga. App. 88, 89 (8 S. E. 2d 131).

In order to convict for involuntary manslaughter, there must be some evidence tending to prove that the unlawful act proximately resulted in the death of the person killed. *Trippe v. State,* 73 Ga. App. 322 (36 S. E. 2d 121). "To hold a person criminally responsible for a homicide, his act must have been the proximate cause of the death as distinguished from the cause of a condition affording an opportunity for the compassing of the death by some other unconnected agency.". *Nelson v. State,* 58 Ga. App. 243, 249 (198 S. E. 305).

Let us examine the indictment in this case under the light of these rulings. Certainly the indictment alleged the commission of an unlawful act or acts. The legislature has declared it unlawful to engage vehicles in a contest of speed, commonly called "drag racing," and prescribed misdemeanor punishment for those engaged therein. Ga. L. 1959, p. 303. Likewise, driving a vehicle in excess of sixty miles per hour on the public roads of this State is an unlawful act. The indictment alleges that the defendant was engaged in both these unlawful acts at the time the deceased was killed. But does the indictment meet the other essential requirement that the killing must be the proximate result of such unlawful act? We think not. The indictment alleges that the deceased "did lose control of his motor vehicle which he—was then and there driving, causing said motor vehicle to leave the highway—inflicting as a result of losing control of said vehicle certain wounds from which he died." It fails to allege any act or acts on the part of the defendant which caused or contributed to the loss of control of the vehicle driven by the deceased, other than the fact that they were engaged in a race at the time.

In *Langston v. State,* 151 Ga. 388 (106 S. E. 903), Judge Atkinson, in discussing the rule in homicide, quoted from Wharton's Criminal Evidence as follows: "The fact of death is not sufficient; it must affirmatively appear that the death was not accidental, that it was not due to natural causes, and *that it was not due to the act of the deceased.*" (Emphasis added.)

The indictment plainly alleges that it was the loss of control by the deceased, his own independent act, which caused his death, and not any act on the part of the defendant. Thus, the indictment fails to allege the essential elements of the offense of involuntary manslaughter as defined by our courts.

The solicitor-general, arguing for the legality of the indictment, asks for this additional weapon to put an end to the sport known as drag racing. The court, along with all public minded citizens, abhors this dangerous activity on our streets and highways. The legislature has declared it to be a misdemeanor. However, to raise the degree of the crime and increase the punishment therefor, being a matter of public policy, is within the province of the legislature rather than the courts.

Accordingly, the judgment of the trial court in overruling the general demurrers must be reversed.

*Judgment reversed. Townsend, P. J., Carlisle and Frankum, JJ., concur.*