Argued February 22, affirmed May 28, reconsideration denied
July 3, petition for review allowed July 30, 1974

STATE OF OREGON, *Respondent, v.* TOBY
EDWARD PETERSEN (No. C 73-03-0988 Cr),
*Appellant.*

522 P2d 912

*R. Ryan Lawrence,* Portland, argued the cause for appellant. With him on the brief was Susak and Lawrence, Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Tanzer, Judges.

TANZER, J.

Defendant was charged in a three-count indictment with manslaughter, ORS 163.125, hit and run, ORS 483.602 (1) and (2), and failure of a witness to furnish name and address at scene of accident, ORS 483.602 (3). He was convicted following a trial to the court on all three counts. The court concluded that the third count of the indictment merged with the second, and therefore ordered defendant discharged on the third count. Imposition of sentence was suspended and defendant was placed on probation with special conditions for three years on each count, to be served concurrently.

Defendant's first assignment of error is that the trial court erred in overruling his demurrer to Count I of the indictment which read as follows:

"The said defendant, on or about February 19, 1973, in the County of Multnomah, State of Oregon, did unlawfully and recklessly cause the death of another human being, to-wit: Daniel Warren, in that the said defendant did while operating a motor vehicle, to-wit: a 1966 G.M.C. pickup truck, participate in a speed contest with one Richard Wille, operating a 1966 Chevrolet Nova automobile, upon a public street, to-wit: Southeast 148th Avenue to it's [sic] intersection with Southeast Powell Boulevard, in the County and State aforesaid. Said speed contest resulting in a collision between the said 1966 Chevrolet Nova automobile and another motor vehicle, to-wit: a 1964 Ford truck tractor being operated by one Ralph Davidson, Jr. The said defendant did thereby cause the death of the said Daniel Warren, a passenger in the said 1966 Chev-

rolet Nova automobile, and that the said defendant did,

"(1) Operate a motor vehicle without keeping a proper lookout;

"(2) Operate a motor vehicle without proper control thereof;

"(3) Operate a motor vehicle at a speed that was greater than reasonable and prudent;

"(4) Disregard a stop sign while operating a motor vehicle; and

"(5) Engage in said speed contest, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

■■ The indictment alleges that defendant "recklessly cause[d] the death of another human being * * *." This allegation follows the language of the manslaughter statute, and is therefore sufficient to state a crime and is valid against a demurrer. *State v. Nussbaum,* 261 Or 87, 491 P2d 1013 (1971). Where the statutory allegations are followed by particular allegations, as in *Andrews,* the indictment is not insufficient simply because the particulars standing alone do not constitute a crime. The particulars are in the nature of surplusage. *State v. Andrews,* 16 Or App 144, 517 P2d 1062 (1974).

■ Defendant contends that the particulars alleged in the indictment negate the statutory allegation of the crime because although he was alleged to be a participant in the automobile race, he was not alleged to be a driver of either of the vehicles directly involved in the collision. Where the particulars contradict the statutory allegations, we should look to whether the allegation of a crime is negated.

The issue of the criminal responsibility of one racing driver for the death of a person actually killed by another racer appears to be a matter of first impression in Oregon, but it has been the subject of appellate decisions in other jurisdictions. At least as early as 1846, it was held that where two individuals were racing their vehicles (in that case, horsedrawn carts) along a public road, and one of them ran into and killed a third person during the course of the race, both racers were guilty of manslaughter. *Regina v. Swindall,* 2 Car & K 230, 175 Eng Reprint 95 (1846). Each participant engages mutually in reckless conduct which causes death. Regardless of which vehicle strikes the victim, the recklessness of both causes the death. That principle has been adhered to by most courts which have addressed the issue. *See State v. Melcher,* 15 Ariz App 157, 487 P2d 3 (1971); *People v. Kemp,* 150 Cal App 2d 654, 310 P2d 680 (1957); *Jacobs v. State,* 184 So 2d 711 (Fla App 1966); *State v. Youngblut,* 257 Iowa 343, 132 NW2d 486 (1965); *Jones v. Commonwealth,* 247 SW2d 517 (Ky 1952); *State v. Fennewald,* 339 SW2d 769 (Mo 1960); *State v. Butler,* 11 Ohio St 2d 23, 40 Ohio Op 2d 43, 227 NE2d 627 (1967). *See also* Anno., Manslaughter—Person Liable, 95 ALR2d 175, 195-196. Those cases which have reached a conclusion that the driver was not guilty appear to have done so not because of disagreement with the general principle, but rather because, in the particular case, a causal link between the defendant's conduct and the death was not proven. *See,* e.g., *People v. Lemieux,* 176 Misc 305, 27 NYS2d 235 (Queens County Ct 1941); *Commonwealth v. Root,* 403 Pa 571, 170 A2d 310 (1961).

■ We adopt the general rule and hold that one who recklessly participates in an automobile race may

be criminally responsible for a death resulting therefrom, even though his vehicle is not the direct instrument of death.

On demurrer, a trial court is required to consider the indictment in the light most favorable to the state. Thus, the trial court herein was required to assume that the state would prove its allegations that defendant acted recklessly and that such reckless conduct caused the decedent's death. Since the particulars are harmonious with the statutory allegations, the trial court correctly overruled defendant's demurrer and his later motion for arrest of judgment.

■ Having concluded that the state adequately alleged the crime of manslaughter, the next question is whether the trial court correctly denied defendant's motion for judgment of acquittal on the manslaughter charge. Consideration of this question requires an examination of the evidence presented at trial to determine whether it was sufficient to enable the factfinder to find that defendant was reckless and that the death resulted from his recklessness.

On the evening of February 19, 1973, defendant and one Mike Barlow encountered Daniel Warren (the decedent for whose death defendant was indicted) and Richard Wille at a service station, and Mr. Wille expressed an interest in racing his Chevrolet Nova against defendant's pickup truck. An acceleration race was attempted near the service station, but the participants decided to move to a different area because of the number of cars on that street. Wille led the way to a point on Southeast 148th Street between Powell Boulevard and Division Street and, heading north on 148th toward Division Street, they engaged

in an "acceleration standoff."[1] Then, the vehicles turned around and headed south on 148th. The vehicles stopped for a moment some 100 feet south of Division Street, there was a short conversation and then both vehicles took off rapidly in the direction of Powell. The Chevrolet Nova, occupied by driver Richard Wille and passenger Daniel Warren, was in the right lane. The pickup truck, occupied by defendant, who was driving, and Mike Barlow, was in the inside lane. The distance from Division Street to Powell Boulevard on 148th Street is approximately four-tenths of a mile. Defendant's pickup was in the lead from the start and continued in the lead as the vehicles reached speeds estimated at 60-80 miles per hour. The posted speed limit was 35 miles per hour. At some point prior to coming to the intersection with Powell Boulevard, defendant began to decelerate his pickup and brought his vehicle to a stop in the left turn lane at the intersection of 148th and Powell.[2] As defendant came to a stop, Wille passed defendant and proceeded without any apparent diminution in speed through a stop sign into the intersection where his car was struck by a truck which was travelling west on Powell. Both Wille and his passenger, Warren, were killed.

---

[1] The witness did not define the term "acceleration standoff" beyond stating that it is not a race.

[2] The testimony concerning the point at which defendant commenced his deceleration included estimates of some 1,050 feet from the intersection (testimony of defendant's passenger during the race), 450-500 feet from the intersection (testimony of the driver of a car following the racers), and "about a block" from the intersection (testimony of the passenger in the car following the racers), and "probably 60 yards" from the intersection (testimony of the driver of a car facing the racers). The testimony as to where defendant was when the collision occurred also varied somewhat. Most witnesses testified that defendant had proceeded all the way to the intersection and was stopped in the left-turn lane, but defendant's passenger testified that defendant was 458 feet from the intersection when the collision occurred.

Following the collision, defendant remained in the left turn lane for a short time and then turned left onto Powell. He left the vicinity of the accident without rendering assistance or informing anyone of his identity.

The testimony indicates that there was no agreed-upon finish line to the race. Defendant's passenger, Barlow, stated that his understanding was that the race would finish when "we figured it was a safe distance for getting up to the speed and closing down and stopping in time." James Stewart, who worked at the service station where the plans were laid for the race, testified on the practices of street racers. He stated that the distance to be raced in a street race is somewhat indistinct, depending on "the distance you have before you have to stop."

A person commits criminal homicide if, without justification or excuse, he intentionally, knowingly, recklessly or with criminal negligence causes the death of another human being. ORS 163.005. Criminal homicide constitutes manslaughter when it is committed "recklessly," ORS 163.125 (1)(a), which is defined in ORS 161.085 (9) as follows:

> " 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Thus, in order for defendant's conviction to be upheld, there must be proof from which the fact-finder

can infer that defendant acted "recklessly" and that defendant's reckless conduct "caused" Warren's death.

There can be no question that the risk created by the race at its inception was "substantial and unjustifiable" and that disregard of such a risk would constitute a "gross deviation from the standard of care that a reasonable person would observe in the situation." The testimony indicated that defendant's pickup truck reached a speed of 70-80 miles per hour before decelerating, and that the decedents' car was only slightly behind defendant. The posted speed limit on the street was 35 miles per hour. The area through which the drivers raced was a residential area, and in the course of the race they passed a number of houses, three intersections with cross-streets (Clinton, Taggart and Woodrow), a school and a playground. The risk to the lives of other motorists, pedestrians, bystanders, and even residents of the houses along the route was obvious.

There is also evidence in the record that defendant was aware of the risk to human life which his conduct created and consciously disregarded it. The testimony indicated that defendant was familiar with automobiles and automobile racing, and defendant himself acknowledged that he knew at the time of the race that he should not have engaged in the race. *Compare State ex rel Juv. Dept. v. Anderson,* 14 Or App 391, 513 P2d 514 (1973). Thus, defendant acted recklessly in entering into the race and in racing with Wille down the street.

■ Defendant contends that even if he was reckless while actively engaged in racing with Wille, his act of slowing down and stopping prior to reaching the in-

tersection where the collision occurred was an act of prudence which terminated his recklessness. A similar contention was rejected by the Supreme Court in *Lemons v. Kelly*, 239 Or 354, 360, 397 P2d 784 (1964):

"* * * One who does participate in setting in motion such hazardous conduct cannot thereafter turn his liability off like a light switch. From the authorities cited we conclude that one who participates in setting such hazardous conduct in motion cannot later be heard to say: 'Oh! I withdrew before harm resulted even though no one else was aware of my withdrawal.' It would be a reasonable probability that the excitement and stimulus created by this race of several miles had not dissipated nor, in fact, terminated at all, in the fraction of a minute in time between the act of passing and the accident. The state of mind of the participants was material. We cannot gauge that state of mind to the point of saying that the stimulus or intent had ended. * * *"

While *Lemons* was a civil case, its factual analysis is equally applicable to the case at bar. The fact-finder was not required to find that the defendant's unilateral and uncommunicated act of slowing and stopping was such an act of termination as would purge his earlier initiation of the race of its quality of recklessness. The evidence authorized a finding that defendant's setting the race in motion was reckless or that there was no effective withdrawal so long as the acts which defendant helped impel had not yet ceased. The substantial and unjustifiable risk to the lives of other motorists and pedestrians created in part by his conduct could be found to have continued unabated up to and including the time of the collision.

■ The next issue to be considered with regard to this assignment of error is the sufficiency of the evidence of causation: Whether defendant's reckless con-

duct caused the death of Daniel Warren. Analysis of this issue involves a two-step approach: First, was defendant's conduct a cause in fact of the death? Second, if so, was it also a legal cause of the death in the contemplation of statutes imposing criminal liability? LaFave and Scott, Criminal Law 248, § 35 (1972).

The test for causation in fact can be stated as follows: Was the defendant's conduct a substantial factor in bringing about the forbidden result? LaFave and Scott, supra, at 250; Perkins on Criminal Law 695-696, § 9 (1969). In this case, had defendant not engaged in the unlawful race with Richard Wille, the accident would never have occurred. Defendant helped create the dangerous situation, and was a part of it. His conduct was a substantial factor in bringing about the decedent's death. *See State v. Melcher,* supra.

Was defendant's conduct the legal cause of the death? Defendant's argument centers on a discussion of tort concepts such as proximate cause, intervening cause, and foreseeability of harm, but tort concepts are of limited utility in criminal prosecutions since they spring from different policy considerations. La-Fave and Scott, supra, at 251-252; Perkins, supra, at 693. *See Lemons v. Kelly,* supra. Basically, criminal culpability exists where the result is within the area of risk which the rules of caution violated by the defendant are intended to minimize.

In this case, the decedent was clearly within the class endangered by the conduct of street-racing, i.e., motorists, pedestrians, etc., and the collision was the sort of injurious event which the prohibitions against street-racing are supposed to prevent. ORS

483.122 (1).[9] Therefore, there is a clear legal causative connection between the defendant's acts and the death.

■■ Defendant suggests that Wille's act of accelerating his auto past defendant's pickup truck and into the intersection was an intervening cause, and that defendant was thereby relieved of responsibility, i.e., that Wille's act superseded defendant's conduct as the cause of death. However, in order to be a superseding cause, the intervening cause must be independent, that is, it must not be a consequence of defendant's antecedent conduct. Perkins on Criminal Law, supra, at 722-725. In the case at bar, Wille's conduct was within the risk of the race, particularly since no finish line had been agreed upon.

■ Defendant suggests that a distinction should be drawn between cases where the decedent was not a participant in the race and cases where he was a participant, and that, since the evidence showed that the decedent was a passenger in one of the racing automobiles, defendant could not be criminally liable for the death. This is also the position taken by the dissent. However, there is no indication that such an exception was intended by the legislature. The words of the statutes are inclusive. They specify no exception. One is guilty of manslaughter if he "recklessly * * * causes the death of another human being." ORS 163.005, 163.125 (1)(a). Had the legislature intended that liability not attach if the victim were a participant in the events leading to the death, it could have easily

[9] ORS 483.122 (1) provides:

"No race or contest for speed shall be held upon any road, street or highway in this state."

so provided. It did so regarding felony murder, ORS 163.115 (1)(c),[⊕] and was capable of specifying a similar exception to manslaughter if it had intended to create one. In the absence of such a provision, this court ought not to amend the statute under the rubric of "policy."

Moreover, logic does not compel the carving out of such an exception. The gravamen of the offense charged in the indictment is recklessness, i.e., the conscious disregard of a substantial and unjustifiable risk that a death would occur, and a death resulting therefrom. That a participant's passenger was killed rather than an innocent third party was an immaterial matter of chance. Such tort concepts as contributory negligence and assumption of the risk are not defenses against responsibility for criminal conduct. *State v. Mellenberger,* 163 Or 233, 95 P2d 709, 128 ALR 1506 (1939); *see generally* Perkins on Criminal Law 969-973 (2d ed 1970). The defendant's conduct is equally reckless, equally causative and equally anti-social regardless of which person is killed in a collision of participants and non-participants or whether a car happens to hit a utility post or a pedestrian. He remains criminally liable or not regardless of how the

---

[⊕] ORS 163.115 (1)(c) provides:

"(1) Except as provided in ORS 163.125, criminal homicide constitutes murder when:

"* * * * *

"(c) It is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit arson in the first degree, burglary in the first degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the first degree and in the course of and in furtherance of the crime he is committing or attempting to commit, or the immediate flight therefrom, he, or another participant if there be any, causes the death of a person other than one of the participants."

civil law may allocate responsibility for money damages.

The dissent, to over-simplify, argues that policy requires that assumption of risk negates the element of causation. In support of that proposition it cites examples such as skydivers and race-track drivers who mutually engage in dangerous activities. We need not decide this case upon extreme examples because these facts are easily distinguishable. The activity at bar presents a substantial risk to the non-participating public. As noted, the chance death of a participant does not diminish the danger of the act to others. The examples cited by the dissent incur only a negligible risk to the public and speculation regarding legislative intent toward coverage of such acts has no application to the facts of this case.

There was sufficient evidence to justify the trier of fact in concluding that defendant was guilty of manslaughter. Defendant's motion for judgment of acquittal on Count I was properly denied.

■ Next, defendant assigns as error the trial court's overruling of his motion to dismiss, which was based on the fact that Richard Wille's father had caused the vehicle in which the death occurred to be cut up into pieces before any examination of it could be made by defendant's counsel or experts. However, defendant does not contend that this action was taken with either the knowledge or the approval of the district attorney's office. Thus, defendant's reliance on cases dealing with deliberate suppression of evidence by the prosecution[6] or inadvertent loss of evidence by

---

[6] *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963).

the prosecution® is misplaced. Defendant has cited no authority for the proposition for which he argues, nor has our research disclosed any. The motion to dismiss was properly denied.

■ Finally, defendant assigns as error the trial court's denial of his motion for judgment of acquittal on the count of the indictment charging hit and run. The issue presented is whether the vehicle defendant was driving was "involved in an accident" within the meaning of ORS 483.602 (1) and (2).® These statutory provisions have existed in substantially the same form since their creation in 1931, but the phrase "in-

---

® *United States v. Bryant,* 439 F2d 642 (DC Cir 1971). *But see Nunn v. Cupp,* 15 Or App 212, 515 P2d 421 (1973).

® ORS 483.602 (1) and (2) provide:

"(1) The driver of any vehicle involved in an accident which results in injury or death to any person or causes damage to a vehicle which is driven or attended by any person, immediately shall stop such vehicle at the scene of the accident, or as close thereto as possible, and shall remain at the scene of the accident until he has fulfilled the requirements of subsection (2) of this section. Every such stop shall be made without obstructing traffic more than is necessary.

"(2) The drivers of any vehicles involved in any accident resulting in injury or death to any person or damage to any such vehicles shall:

"(a) Give to the other driver or surviving passenger, or any person not a passenger injured as a result of such accident, his name, address and the registration number of the vehicle which he is driving, and the name and address of any other occupants of such vehicle.

"(b) Upon request and if available, exhibit and give the number of his operator's or chauffeur's license to the persons injured or to the occupant of or person attending any vehicle damaged.

"(c) Render to any person injured in such accident reasonable assistance, including the conveying or the making of arrangements for the conveying of such person to a physician, surgeon or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such conveying is requested by any injured person."

volved in an accident" has not been construed by an Oregon appellate court.

At a minimum, it is clear that physical contact is not required in order for a vehicle to be "involved in an accident." Thus, in *People v. Bammes,* 265 CA2d 626, 71 Cal Rptr 415 (1968), where the defendant pulled into the path of a station wagon causing the station wagon to swerve and be struck by a logging truck, the defendant was held to be "involved" in the accident even though there was no physical impact with defendant's automobile. The court reasoned that defendant's action in turning in front of the station wagon was "an efficient cause" of the station wagon's collision with the truck, because it was that action which precipitated the need for evasive action on the part of the station wagon. Similarly, in *Baker v. Fletcher,* 191 Misc 40, 79 NYS2d 580 (1948), where the defendant opened the door of his car, causing another vehicle to swerve and collide with a third vehicle, the court found that the defendant was "involved" in the accident, holding that whenever a person affects "in any way" the operation of the vehicles, he is involved.

Thus, it is clear that the class of persons "involved in an accident" has not been limited to those whose vehicles or bodies are physically involved in a collision. It is equally clear that the class does not include persons who merely happen to be close enough to the accident to see it or hear it, since subsection (3) of ORS 483.602⑨ places certain duties on a "witness"

---

⑨ ORS 483.602 (3) provides:

"Any witness to the accident shall furnish to the driver or occupant of such vehicles, or injured persons, his true name and address."

to an accident which differ from the duties imposed on persons "involved." Because defendant's conduct in the operation of his vehicle was properly found to have a causal relationship to the death sufficient to sustain a manslaughter conviction, *a fortiori* there was sufficient causal relationship to authorize a finding that it was "involved" for purposes of the hit and run statute.

Affirmed.

SCHWAB, C. J., dissenting.

I would reverse the manslaughter conviction.

A person commits criminal homicide when he "causes the death of another human being." ORS 163.005 (1). Criminal homicide constitutes manslaughter when it "is committed recklessly." ORS 163.125 (1)(a). Reckless means "that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result [death] will occur." ORS 161.085 (9).

As I see it, the question is whether defendant's reckless conduct "caused" the death of the victim. The problem here is not "causation in fact," it is "legal causation." *See generally,* LaFave and Scott, Criminal Law 246-267 (1972); Perkins, Criminal Law 685-738 (2d ed 1969). In unusual cases like this one, whether certain conduct is deemed to be the legal cause of a certain result is ultimately a policy question. The question of legal causation thus blends into the question of whether we are willing to hold a defendant responsible for a prohibited result. Or, stated differently, the issue is not causation, it is responsibility. In my opinion, policy considerations are against imposing

responsibility for the death of a *participant*[①] in a race on the surviving racer when his sole contribution to the death is the participation in the activity mutually agreed upon.

*Commonwealth v. Root,* 403 Pa 571, 170 A2d 310, 82 ALR2d 452 (1961), illustrates the rule I would adopt. In that case, two persons were racing their cars on the highway. One of the racers collided with another car, resulting in that racer's death. The court reversed the surviving racer's manslaughter conviction, holding the necessary legal causation to be absent as to a fellow participant in the race, but suggesting legal causation[②] would be present had the victim not been a participant. *Accord: Thacker v. State,* 103 Ga App 36, 117 SE2d 913 (1961).

The facts of *Commonwealth v. Atencio,* 345 Mass 627, 189 NE2d 223 (1963), are another illustration. In that case, three persons were playing "Russian roulette" and one of them shot and killed himself. A sur-

---

[①] Although the victim in this case was a passenger in one of the cars, rather than a driver, he was there knowingly and voluntarily. Indeed, there was evidence that he first suggested the idea of racing. Thus, I regard the victim as a participant in the race. *Cf.,* Nikkila v. Niemi, 248 Or 594, 433 P2d 825 (1968); Annotation, 84 ALR2d 448 (1962). Admittedly, it is difficult to reconcile the language of *Nikkila* with the language of Lemons v. Kelly, 239 Or 354, 360, 397 P2d 784 (1964), quoted by the majority.

[②] The suggestion is implicit in the holding rather than contained in the language of the opinion. As pointed out by LaFave and Scott, Criminal Law at 265, in analyzing the Pennsylvania court's holding in Commonwealth v. Root, 403 Pa 571, 170 A2d 310, 82 ALR2d 452 (1961), and in Commonwealth v. Redline, 391 Pa 486, 137 A2d 472 (1958):

"It is submitted that the true reason for the holding in these two cases is the court's feeling, not clearly expressed in the two cases, that A should not, in all justice, be held for the death of B who was an equally willing and foolhardy participant in the bad conduct which caused his death * * *."

vivor's conviction for manslaughter, i.e., recklessly causing the death of another, was affirmed. I would vote to reverse such a conviction. Since the participants had knowingly and voluntarily joined in a reckless course of conduct, I would not impose liability for manslaughter on the survivors.

It is not unheard of for people to engage in hazardous vocations and avocations. It could be said, for example, that professional racetrack drivers earn their living by consciously disregarding a substantial risk that death will occur on the racetrack. Yet, it would probably strike most people as strange if the surviving drivers were prosecuted for manslaughter following a fatal racetrack accident. But that result could follow from the majority's analysis of legal causation; that result would not be possible under my analysis.

And some people engage in recreational activities—everything from skydiving to deep-sea diving— knowing they involve a risk of death. Suppose two fishermen knowingly and voluntarily take a small boat into the ocean even though a severe storm is predicted. Each encourages the other to do so. If one drowned in the storm, would we say the survivor "caused" his death? The majority's analysis would answer that question in the affirmative; my analysis would answer it in the negative.

My point is that people frequently join together in reckless conduct. As long as all participants do so knowingly and voluntarily, I see no point in holding the survivor(s) guilty of manslaughter if the reckless conduct results in death. Contrary to the majority, I find no expression of legislative policy on this issue in the manslaughter statute, or in any other statute. The

issue here is "legal causation," an issue which has been traditionally left to the courts.[9] Of course, all participants could be prosecuted if their reckless conduct constitutes some other offense. And all participants could be prosecuted if their reckless conduct results in the death or injury of a nonparticipant. Drawing the line at that point, however, seems to be a sufficient deterrent to me. Extending the concept of legal causation beyond that point, as the majority does, can only be justified to deter people from jointly engaging in hazardous activity, knowing what the risks are and being willing to take them. I would leave that a matter of choice for each individual.

Finally, I join the majority in affirming defendant's conviction for failure to perform the duties required of a driver "involved in an accident." ORS 483.602 (1) and (2). I would hold "involved in an accident" means either physical involvement or doing an act that was a contributing cause in fact of an accident. There was evidence from which the trier of fact was entitled to conclude that defendant's act of racing contributed to causing the fatal accident.

---

[9] "* * * Since most penal codes contain no statutory provision defining causation, imputing responsibility to a defendant for having 'caused' or brought about a result requires finding a standard that fits the policy underlying the particular crime, as defined by statute * * *." Ruy, *Causation in Criminal Law*, U of Pa Law Rev 773, 785 (1958).