Argued April 25, affirmed June 20, reconsideration denied July 26, petition for review denied November 21, 1978

STATE OF OREGON, *Respondent,*
*v.*
FRANKLIN DEE SIMMONS, SR., *Appellant.*
(No. 2236-C, CA 9388)
580 P2d 564

H. Clifford Looney, Vale, argued the cause for appellant. With him on the brief was Swan, Butler & Looney, P.C., Vale.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

**TANZER, J.**

Defendant was convicted of criminally negligent homicide.[1] The issues on appeal relate to whether defendant's negligence was the legal cause of decedent's death. *See, State v. Petersen*, 270 Or 166, 526 P2d 1008 (1974).

Defendant and the decedent, defendant's brother-in-law, were together for approximately 24 hours preceding the death. The decedent arrived at defendant's house on a visit from Missouri at about 9 p.m. Thereafter, the two men stayed up all night talking and watching television. At 6 a.m. they drove to Nyssa in the decedent's vehicle for breakfast. After eating they went to the Smoke Shop where they played pool and drank beer.

Around 11 a.m. they drove to Ontario to visit a relative. She was not at home and so the men went to a local tavern where they again played pool and drank beer. Except for short trips to see if the relative had arrived home and a visit to the bank by defendant to cash a check, the two men spent the rest of the afternoon in the tavern and at a local bar.

At about 6 p.m. the men ate dinner at the tavern. No alcohol was consumed during the meal or thereafter. They then went back to the relative's home but, again, were unable to make contact. At decedent's request, defendant then began the drive back to Nyssa.

---

[1] ORS 163.145 provides:

"(1) A person commits the crime of criminally negligent homicide when, with criminal negligence, he causes the death of another person.

"(2) Criminally negligent homicide is a Class C felony."

ORS 161.085(10) defines criminal negligence as follows:

" 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be award of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

About halfway between Ontario and Nyssa, defendant apparently fell asleep at the wheel. The vehicle left the road and collided, head-on, with a tree. There was no indication that defendant had applied his brakes or attempted to swerve clear prior to impact. Defendant suffered minor injuries in the collision; the decedent was pronounced dead on arrival at the hospital.

Analysis of a blood sample taken from defendant after the accident disclosed a blood-alcohol content of .09 percent. An expert estimated that at the time of the accident defendant's blood-alcohol content was approximately .11 percent.[2]

At the close of the state's case-in-chief, defendant moved for a judgment of acquittal on the ground that defendant's conduct was not the proximate cause of the decedent's death. The motion was based upon the principle developed in *State v. Petersen, supra.*

In *Petersen,* defendant was indicted for manslaughter. The charge arose from a speed contest which took place on a street in Portland. Defendant was the driver of one of the vehicles. The decedent was a willing passenger in the other vehicle. When, in the course of the race, the contestants approached a controlled intersection, defendant brought his truck to a stop. However, the driver of the other car proceeded through the intersection, at a high speed, and collided with a truck. The passenger and the driver were killed.

---

[2]ORS 487.545 provides:

"(1) At the trial of any civil or criminal action, suit or proceeding arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicants, if the amount of alcohol in the person's blood at the time alleged is less than .10 percent by weight of alcohol as shown by chemical analysis of the person's breath, blood, urine or saliva, it is indirect evidence that may be used with other evidence, if any, to determine whether or not he was then under the influence of intoxicants.

"(2) Not less than .10 percent by weight of alcohol in a person's blood constitutes being under the influence of intoxicating liquor.

"(3) Percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred cubic centimeters of blood."

This court affirmed defendant's manslaughter conviction for the passenger's death, over a strong dissent by Chief Judge Schwab. *State v. Petersen*, 17 Or App 478, 522 P2d 912 (1974). The dissent argued that, under the peculiar circumstances of that case, the defendant's conduct should, as a matter of policy, be held not to be a legal cause of the passenger's death.

> "As I see it, the question is whether defendant's reckless conduct 'caused' the death of the victim. The problem here is not 'causation in fact,' it is 'legal causation.' *See generally*, LaFave and Scott, Criminal Law 246-267 (1972); Perkins, Criminal Law 685-738 (2d ed 1969). In unusual cases like this one, whether certain conduct is deemed to be the legal cause of a certain result is ultimately a policy question. The question of legal causation thus blends into the question of whether we are willing to hold a defendant responsible for a prohibited result. Or, stated differently, the issue is not causation, it is responsibility. In my opinion, policy considerations are against imposing responsibility for the death of a *participant* in a race on the surviving racer when his sole contribution to the death is the participation in the activity mutually agreed upon." (Original emphasis; footnote omitted.) 17 Or App at 495-96.[3]

The dissent contended that it was improper to hold defendant criminally responsible when his only recklessness was entering into a mutual decision with the decedent to voluntarily encounter a known risk of death.

> "My point is that people frequently join together in reckless conduct. As long as all participants do so knowingly and voluntarily, I see no point in holding the survivor(s) guilty of manslaughter if the reckless conduct results in death [to one of the participants]. * * *" 17 Or App at 497.

On review, the Supreme Court reversed defendant's conviction and expressly adopted the reasoning of Judge Schwab's dissent. *State v. Petersen*, 270 Or 166, 168, 526 P2d 1008 (1974). We assume that, by doing so,

---

[3] The victim in *Petersen* was a passenger, but he was treated as a participant because he promoted the race.

the court intended to adopt the dissent's view of policy considerations applicable to that specific case, rather than to establish a rule of broader application. The general rule is that tort concepts such as contributory negligence and assumption of the risk are not defenses in a criminal prosecution. *See* LaFave and Scott, Criminal Law, § 57 at 419 (1972), and Perkins, Criminal Law, 971 (2d ed 1970). *State v. Petersen, supra,* does not purport to hold to the contrary.

The facts in this case do not, as a matter of policy, mandate the conclusion that defendant's conduct was not a legal cause of decedent's death. *State v. Petersen* is distinguishable for at least two reasons.

First, in *Petersen*, the defendant's reckless conduct, *i.e.,* his agreement to participate in the race, was, at most, an indirect or remote cause of death. Subsequent to defendant's conduct, the recklessness of the other car's driver in speeding through the intersection was a more direct cause of the fatal accident. The existence of such a superseding cause was a factor in the analysis of the *Peterson* dissent. Moreover, both of the cases cited in the dissent in support of its finding of no proximate cause involved similar intervening negligence. See, *Thacker v. State,* 103 Ga App 36, 117 SE2d 913 (1961); *Commonwealth v. Root,* 403 Pa 571, 179 A2d 310, 82 ALR2d 452 (1961). In contrast, in the present case, defendant's negligent operation of the automobile was, in time and effect, the nearest and most direct cause of decedent's death.

Second, in *Petersen,* the only reckless conduct on the part of the defendant was his agreement to participate in the speed contest. The passenger, whose death was caused thereby, was reckless in precisely the same way and to the same degree. In this case the conduct of defendant and decedent were not identical. Although both men had been drinking and both suffered from lack of sleep, these things, standing alone, do not constitute gross negligence. Rather, defendant's gross

negligence consisted of his decision to drive an automobile, in spite of his condition, and the manner in which he subsequently did so. Unlike the victim in *Petersen*, this victim's action did not actively contribute to the cause of the injury.

For the foregoing reasons, we hold that the principle of *State v. Petersen* was not applicable to this case as a matter of law. Accordingly, the trial court did not err in denying defendant's motion for judgment of acquittal.

Defendant also assigns as error the trial court's refusal to give his requested instruction with respect to his *Petersen* defense. Because the requested instruction was not an accurate statement of law, it was not error to refuse it. *State v. Brazeal,* 247 Or 611, 431 P2d 840 (1967).

Affirmed.