## STATE OF OREGON,
*Respondent,*

*v.*

## KENT CHRISTOPHER WELCH,
*Appellant.*

## (C 82-10-37851; CA A27891)

681 P2d 163

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge and Newman, Judge.

NEWMAN, J.

**NEWMAN, J.**

Defendant appeals his conviction for manslaughter in the second degree. ORS 163.125. He asserts that he was not culpable, because the victim was a voluntary participant in the reckless conduct which resulted in the victim's death. We affirm.

At about 3 a.m., on October 5, 1982, two Portland police officers received a radio dispatch reporting that there had been a shooting at defendant's house. As the officers approached the house, defendant ran down the steps and told them, "I've killed him — my best friend."[1] An officer entered the house and discovered Bishop's body on defendant's bedroom floor. A sawed-off shotgun was also lying on the floor.

Defendant explained that he and Bishop were playing a game with defendant's fully-loaded shotgun.[2] Each would take turns pointing the shotgun at the other and, with a serious expression, make a facetious threat. The victim began, but he smirked and could not remain serious. Defendant took the gun and told Bishop, "You raped my sister, I'm gonna kill you." To make the threat more compelling, defendant jabbed the gun at Bishop a few times. His finger was on the trigger, and the shotgun fired, fatally wounding Bishop.

The indictment charged that defendant did "unlawfully and recklessly cause the death of another human being, to wit: Charles Owen Bishop, by shooting the said Charles Owen Bishop with a firearm, to wit: a shotgun." ORS 163.125 provides:

"(1) Criminal homicide constitutes manslaughter in the second degree when:

"(a) It is committed recklessly; * * *."

"Recklessly" is defined in ORS 161.085(9):

---

[1] Defendant did not testify at trial. The facts are based on the officers' observations and statements made by defendant, including a taped statement made approximately six hours after the incident. The tape was received in evidence and submitted to the jury.

[2] The shotgun had one round in the chamber and five rounds in the magazine. The safety was off.

" 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Relying on *State v. Petersen,* 270 Or 166, 526 P2d 1008 (1974), defendant assigns as errors the court's failure to grant his motion for judgment of acquittal and to give a requested jury instruction.[3] In *Petersen,* the defendant also was charged with second degree manslaughter by recklessly causing the death of another. The defendant and the victim participated in a drag race—an automobile race at high speed—on a public city street. Although the defendant stopped his vehicle at an intersection, the other vehicle in which the victim was a passenger raced into the intersection and was struck by a truck, and the victim was killed. We affirmed the manslaughter conviction, but Chief Judge Schwab dissented. *State v. Petersen,* 17 Or App 478, 522 P2d 912 (1974). The Supreme Court reversed the manslaughter conviction and adopted the dissent as the opinion of the court. That dissent stated that "policy considerations are against imposing responsibility for the death of a *participant* in a race on the surviving racer when his sole contribution to the death is the participation in the activity mutually agreed upon." 17 Or App at 495. (Emphasis in original.)

■ *Petersen* does not control here. Although the victim in *Petersen* was a participant with the defendant in the race, he was killed by a vehicle driven by a third party, not by the defendant. The latter's sole contribution to the victim's death was his participation in the race. Here, defendant was not solely a participant with the victim in the agreed upon reckless conduct. Defendant shot and killed him.

■ In defendant's third assignment he argues that the court erred in not giving a jury instruction that we held should have been given in *State v. Van Gorder,* 56 Or App 83, 641 P2d

---

[3] Because both assignments of error are based on *Petersen,* we will consider them jointly.

584, *rev den* 293 Or 146 (1982).[4] In *Van Gorder* the defendant and another person were playing Russian roulette in the front seat of a car. The victim was sitting in the back seat and did not participate in the game. He was shot when the defendant handed the revolver to him and the gun discharged. The indictment in *Van Gorder* alleged that the defendant recklessly caused the victim's death, but it did not allege that the defendant recklessly shot the victim with a revolver. The requested jury instruction was necessary to focus the jury's attention on the culpable mental state at the relevant time— when the gun discharged—and not on the mental state exhibited by participation in Russian roulette. As we stated:

> "The fact that the indictment does not allege the means by which defendant caused the death of Blattman makes it all the more important that defendant's requested instruction should have been given. Had the indictment alleged that death was caused by shooting Blattman with a revolver, the jury would have known that it was defendant's state of mind at the time the shooting occurred which they were to consider. Without describing the precise act in the indictment and without an instruction limiting the jury's consideration to the time the revolver was fired, the jury was free to find that defendant's act of engaging in the game of 'Russian roulette' was enough to establish that he was acting with a reckless state of mind. Defendant's agreement to participate in the game of 'Russian roulette' was, at most, an indirect or remote cause of Blattman's death. It is defendant's conduct in handing the gun to Blattman, and the way that it was handed to

---

[4] Defendant requested this jury instruction:

"You have been instructed as to the elements the state must prove to establish that the defendant is guilty of Second Degree Manslaughter.

"To find the defendant guilty of Second Degree Manslaughter, you must find beyond a reasonable doubt that the defendant, at the precise moment the gun discharged, was acting with the requisite mental state.

"Evidence has been presented from which you could find that the activity in which Kent Welch and Charles Bishop were engaged in that morning was a generally reckless activity. However, in addressing the question of guilt or innocence of the defendant you are to focus only on the moment when the gun discharged.

"In other words, in determining whether or not the defendant is guilty of Second Degree Manslaughter, you must address only the conduct and mental state of the defendant at the moment the gun discharged."

him, which must be examined for the determination of whether defendant was acting recklessly." 56 Or App at 87.

Here, however, the indictment alleges that defendant shot Bishop with a shotgun. The court read the indictment to the jury before opening statements and again during the jury instructions. The jury's attention was already focused on defendant's state of mind at the time when the shotgun discharged. There was no possibility of confusion in the jury's mind that defendant's reckless conduct, if any, was in jabbing the loaded shotgun at Bishop with his finger on the trigger. Even assuming that the requested jury instruction was appropriate, the court's refusal to give it was harmless error.

Affirmed.