Argued and submitted November 7, 2006, decision of Court of Appeals and judgment of circuit court affirmed June 28, 2007

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## JOSHUA JONATHAN MURRAY,
*Petitioner on Review.*

(CC C020284CR; CA A120622; SC S53523)

162 P3d 255

Shawn Wiley, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Division, Office of Public Defense Services.

Laura S. Anderson, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

GILLETTE, J.

---

** Carson, J., retired December 31, 2006, and did not participate in the decision of this case. Linder, J., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

This criminal case requires this court to visit once again an old conundrum respecting the permissibility of punishing an individual criminally for reckless activity when the "victim" of that activity to some degree participated in the reckless conduct. Defendant argues that, under such circumstances, no criminal liability can be assigned to either participant. The trial court disagreed, convicting defendant of assault in the third degree, together with two counts of criminal mischief.[1] On defendant's appeal, the Court of Appeals affirmed the decision of the trial court without opinion. *State v. Murray*, 204 Or App 779, 132 P3d 62 (2006). We allowed defendant's petition for review and now affirm the decision of the Court of Appeals.

Although the parties state the essential facts somewhat differently, they do not appear to dispute them. Defendant owns an automobile shop where he converts conventional cars into racing machines by modifying a car's body, suspension, brakes, and engine.[2] The victim, Harris, was defendant's employee at the shop. On the night of February 24, 2001, defendant was "test-driving" a Volkswagen GTI that defendant and Harris had modified for racing. Defendant was driving; Harris was in the front passenger's seat, monitoring the car's performance in various respects both by using his own senses and by using a laptop computer. Defendant drove the car into a residential neighborhood where the speed limit was 35 miles per hour and accelerated the car to a speed in excess of 90 miles per hour. At that point, defendant lost control of the vehicle, which skidded into a power pole, sheared off the pole, and burst into flames. Defendant, who suffered a concussion, was able to get out on his own. Harris was severely injured; passersby pulled him out of the burning car.

Although Harris was defendant's employee, he did not feel coerced to participate in the test drives that

---

[1] Defendant does not challenge the propriety of the two convictions for criminal mischief in this court; the sole issue before us concerns defendant's conviction for assault in the third degree.

[2] Defendant's customers are amateurs who race primarily on weekends.

defendant would make with cars on which the pair worked. Indeed, there were times when Harris drove and defendant observed. Thus, there is no question in this case that Harris's participation in the test drive of the Volkswagen on the night in question was voluntary.

As noted, defendant was charged, *inter alia*, with assault in the third degree in connection with the crash of the Volkswagen. Assault in the third degree is defined in ORS 163.165. That statute provides, in part:

"(1) A person commits the crime of assault in the third degree if the person:

"(a) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon."[3]

Defendant elected to waive his right to a jury trial and agreed to be tried by the court. At trial, defendant stipulated that Harris, the victim, was seriously physically injured in the crash, that defendant's own conduct in driving the car at the time was reckless, and that his recklessness led to Harris's injuries. Nonetheless, at the close of the state's case, defendant moved for a judgment of acquittal on the assault charge on the ground that, viewing the facts in the light most favorable to the state, the evidence established that the victim had been a knowing participant in the recklessness and, as a consequence, there was no "legal causation" on which to base a conviction. In so moving, defendant relied on *State v. Petersen*, 270 Or 166, 526 P2d 1008 (1974), which we address in depth later in this opinion. As noted, the trial court disagreed with defendant and found him guilty, and the Court of Appeals affirmed the conviction without opinion.

■　We begin by examining the statute that defendant was convicted of violating, ORS 163.165. Under that statute, a person is guilty of third-degree assault if he recklessly "causes" injury to "another" using a dangerous weapon. To discern the meaning of ORS 163.165, we employ the familiar methodology for statutory construction that this court first described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Under that methodology, we first

---

[3] The "dangerous weapon" alleged in this case was the car.

examine the words of the statute in context. *Id.* at 610-11. If the meaning of the statute is clear at that first level of analysis, then we proceed no further. *Id.* at 611.

The word "cause" is not defined in the criminal statutes. It is, however, a word of common usage, which we presume the legislature intended to be given its plain, natural, and ordinary meaning. *Id.* The dictionary defines the verb "cause" as follows: "1: to serve as a cause or occasion of: bring into existence: MAKE (careless driving ~s accidents) * * * 2: to effect by command, authority or force." *Webster's Third New Int'l Dictionary* 356 (unabridged ed 2002).

■  In addition, what a person must cause under ORS 163.165, in order to be guilty of third-degree assault, is a serious physical injury to "another." The statute contains no express limitation on who the victim might be and contains no provision respecting the victim's mental state. Nothing in the foregoing text (or the context) of ORS 163.165 suggests that the legislature intended to carve out an exception for harm done to willing participants in the conduct. Based on our review of the text and context to this point, therefore, a person commits third-degree assault under ORS 163.165 if he or she recklessly brings about, makes, or effects by force the serious injury of another person with a dangerous weapon, no matter the role of the other person in the reckless conduct.

■  At the first level of analysis of a statute, this court also considers case law interpreting that statute. *See State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998) (so stating). In that regard, defendant suggests that this court in *Petersen* effectively redefined the concept of legal responsibility in cases of this kind.[4] After that case, according to defendant, a person cannot be said to have legally caused a result to a victim if the victim was a willing participant in the conduct that

---

[4] In *Petersen*, this court did not interpret the same statute, ORS 163.165, that is at issue here. Rather, that case concerned the interpretation of the second-degree manslaughter statute, ORS 163.125. However, the key inquiry in that case was the same as in the instant case, *viz.*, whether one person recklessly "causes" an effect on another person (in that case, death) if the other person was a willing participant in the reckless conduct. Accordingly, we agree that this court's statutory analysis in *Petersen* provides relevant context for our decision in the present case.

led to the harm to the victim. As we shall show, however, defendant reads too much into this court's decision in *Petersen*.

In *Petersen*, two cars were involved in a speed contest. The defendant was the driver of one of the vehicles; the victim was a passenger in the other and a willing participant in the race. The two vehicles raced through city streets in Portland, reaching speeds of 60 to 80 miles per hour. After about a half-mile, the two vehicles approached an intersection with Powell Boulevard. The defendant, whose pickup truck had been in the lead for most of the race, decelerated as he approached Powell, coming to a complete stop at the intersection. The driver of the car in which the victim was riding passed defendant and proceeded, without slowing down, into the intersection, where his car was struck by a truck traveling west on Powell. Both the driver of that car and the victim were killed in the collision.

The defendant was charged with, among other offenses, second-degree manslaughter, for recklessly causing the death of the passenger in the other racing car.[5] Under ORS 163.125, a person commits the crime of second-degree manslaughter if he or she recklessly "causes the death of another human being."[6] The defendant was convicted of that crime in the trial court. He appealed his conviction to the Court of Appeals, which affirmed in a divided decision. *State v. Petersen*, 17 Or App 478, 522 P2d 912 (1974). The Court of Appeals majority held that the defendant's conduct was the "cause in fact" of the victim's death, insofar as it was a substantial factor in bringing it about. *Id.* at 489. In addition, the court held that the defendant's conduct was the legal cause of the accident, because the victim's death had been within the

---

[5] Apparently, the defendant was not charged with the death of the driver of the car in which the victim was the passenger.

[6] ORS 163.125 provides, in part:

"(1) Criminal homicide constitutes manslaughter in the second degree when:

"(a) It is committed recklessly[.]"

ORS 163.005(1), in turn, provides that a person commits criminal homicide if that person "intentionally, knowingly, recklessly or with criminal negligence causes the death of another human being."

area of risk that the rules of caution that the defendant had violated were intended to minimize. *Id.* at 489-90.

Chief Judge Schwab dissented. Judge Schwab began by defining the pertinent inquiry as whether the defendant's conduct was the legal cause of the victim's death, which, he opined, is "ultimately a policy question." *Id.* at 495. He then went on to state that, in his view, "policy considerations are against imposing responsibility for the death of a *participant* [ ] in a race on the surviving racer when his sole contribution to the death is the participation in the activity mutually agreed upon." *Id.* at 495-96 (emphasis in original; footnote omitted).

In support of his basic proposition, Chief Judge Schwab described several other scenarios that could lead to the death of one of the participants, but in which he would not find a survivor legally responsible: a game of Russian roulette where one of the participants shoots and kills himself; an automobile race at a race track where one of the racers is involved in a fatal crash; and risky recreational activities such as skydiving, deep sea diving, or even ocean fishing in inclement weather, where all involved know that there is a risk of death and one of the participants in fact dies. Chief Judge Schwab concluded,

> "My point is that people frequently join together in reckless conduct. As long as all participants do so knowingly and voluntarily, I see no point in holding the survivor(s) guilty of manslaughter if the reckless conduct results in death. Contrary to the majority, I find no expression of legislative policy on this issue in the manslaughter statute, or in any other statute. The issue here is 'legal causation,' an issue which has been traditionally left to the courts."

*Id.* at 497-98.

After the Court of Appeals affirmed the defendant's manslaughter conviction in *Petersen*, the defendant sought review in this court. In a very short opinion, this court reversed. As pertinent here, this court, after briefly reviewing the majority holding below, stated,

> "Chief Judge Schwab dissented, expressing the opinion that ORS 163.125 should not be interpreted to extend to

those cases in which the victim is a knowing and voluntary participant in the course of reckless conduct. We agree with the reasoning in the dissenting opinion and adopt it as the opinion of this court."

*Petersen*, 270 Or at 167-68.

■　*Petersen* predates by almost 20 years this court's articulation of its statutory construction methodology in *PGE*. The court, therefore, did not follow that methodology in interpreting ORS 163.125, nor could it have been expected to. It is a fact, however, that neither this court nor Chief Judge Schwab specifically relied on the statutory wording or its context in interpreting that statute. Instead, as noted, Chief Judge Schwab based his interpretation on his own view of an appropriate legislative policy respecting legal causation, and this court adopted that reasoning wholesale. Nonetheless, as this court has had occasion to state, in one form or another, on many occasions, considerations of *stare decisis* weigh particularly heavily when this court has purported to interpret a statute. *See, e.g., State v. Ciancanelli*, 339 Or 282, 290, 121 P3d 613 (2005) ("A decent respect for the principle of *stare decisis* dictates that this court should assume that its fully considered prior cases are correctly decided."). Accordingly, to the extent that this court, in *Petersen*, truly and authoritatively interpreted the scope of the word "cause" in the manslaughter statute (and to the extent that that interpretation is equally applicable in other criminal statutes, including, as pertinent here, ORS 163.165), then this court considers itself bound by that interpretation, because the legislature has not changed that statute in any material respect since the court announced its opinion in *Petersen* in 1974.

That said, we turn to examine what was actually before the court in *Petersen* and what the court actually held there. In *Petersen*, the defendant's conduct—even if it was reckless—did not cause the victim's death; the defendant's contribution was limited to participation in the speed contest. The victim was killed when a different person—the driver of the car in which the victim was riding—recklessly chose to speed into a busy intersection. Similarly, none of the examples that Chief Judge Schwab gave to illustrate his view of legal causation in the manslaughter statute is one in which a

potential defendant, by his or her own conduct other than mere participation in the risky activity, caused a victim's death. Thus, as we read Chief Judge Schwab's dissent in *Petersen*—and this court's adoption of it—that case stands for the proposition that the mere fact that two people both participate in reckless conduct at the same time and place does not mean that one of the participants necessarily brings about, makes, or effects by force a harm to the other participant; that result requires something more. Chief Judge Schwab succinctly articulated that precise point when he stated that, in his view, the court should not impose legal responsibility "for the death of a *participant* [ ] in a race on the surviving racer *when his sole contribution to the death* is the participation in the activity mutually agreed upon." *Petersen*, 17 Or App at 495-96 (first emphasis in original; second emphasis added; footnote omitted).

■     The foregoing discussion shows that nothing in *Petersen* holds that a participant in a reckless activity whose recklessness *does* bring about, make, or effect by force an injury to or the death of another person would not be criminally liable for the consequences of his or her conduct, even if the victim voluntarily placed himself or herself in a position to be so injured or killed. It follows that the court's holding in *Petersen* does not absolve defendant of criminal liability for his conduct in this case. Rather, after examining the text of ORS 163.165, in context, including this court's decision in *Petersen*, it is clear at the first level of our analysis of ORS 163.165 that a person commits third-degree assault if, in addition to participation in the reckless activity, that person's own recklessness causes—*i.e.*, brings about, makes, or effects by force—serious physical injury to another by means of a deadly or dangerous weapon, regardless of the other person's willing participation in the reckless activity. Here, it is undisputed that, in that sense, defendant caused Harris's serious physical injuries; he stipulated that he was driving recklessly and that his reckless driving led directly to the crash that injured Harris. Under ORS 163.165, defendant is guilty of third-degree assault.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.